# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

|  |  |
|---|---|
| IN RE:<br><br>**MID-ATLANTIC RHEUMATOLOGY, LLC**<br><br>       **Debtor** | **Case No. 25-10845**<br>**Chapter 11, Subchapter V** |

**DECLARATION OF DANIEL A. STAEVEN IN SUPPORT OF
APPLICATION FOR AUTHORITY TO EMPLOY
FROST & ASSOCIATES, LLC
AS BANKRUPTCY COUNSEL FOR THE DEBTOR**

I, Daniel A. Staeven, state:

1.     I am a Director in the law firm of Frost & Associates, LLC ("Frost"), which maintains offices for the practice of law at 839 Bestgate Road, Suite 400, Annapolis, Maryland 21401. I am admitted to practice law before the Bars of the District of Columbia, Commonwealth of Virginia, and the State of Maryland, as well as the United States Bankruptcy Courts, District Courts and Courts of Appeals in these jurisdictions.

2.     Mid-Atlantic Rheumatology, LLC, (the "Debtor") filed for relief under Chapter 11, Subchapter V of the United States Bankruptcy Code on January 29, 2025 (the "Petition Date"). The Debtor is submitting an Application (the "Application") for authority to employ Frost as bankruptcy counsel in this proceeding. I make this declaration in support of the Application pursuant to Sections 327 and 329 of the Bankruptcy Code and Bankruptcy Rules 2014, 2016, and 5002.

3.     Except as is otherwise indicated below, the facts set forth in this Declaration are based upon my own personal knowledge or records maintained by Frost in the ordinary course of its business, which have been reviewed by me and/or by other partners or employees of Frost at my direction, or upon information known by other partners, associates, or employees of Frost and conveyed to me.

1

**<u>Frost's Qualifications and the Scope of Frost's Retention</u>**

4.	Frost is a firm of over 25 lawyers engaged in the general practice of law with its primary offices in Annapolis, Maryland. Frost has a regional practice in bankruptcy and restructuring matters, as well as corporate, litigation, tax collection and controversy, international tax, and estate planning, among others. Frost's bankruptcy and restructuring lawyers have experience representing clients involved in all aspects of Chapter 11, Subchapter V proceedings, as well as in non-judicial restructurings and workouts.

5.	On or about December 17, 2024, the Debtor contacted Frost to provide legal services and advice relating to financial difficulties which he was experiencing. As a result, Debtor engaged Frost on December 26, 2024 (the "Retention Date"), Frost represented and advised the Debtor in connection with such financial difficulties and ultimately with this Chapter 11, Subchapter V proceeding.

6.	The Debtor asked Frost to represent them in their reorganization efforts and to render the following services in connection with this Chapter 11, Subchapter V case:

a.	To provide legal advice with respect to the Debtor's powers and duties pursuant to the Bankruptcy Code.

b.	To prepare and file on behalf of the Debtor all applications, schedules, motions, responses, reports, objections and other pleadings as may be necessary and as the Debtor authorizes;

c.	To provide such other bankruptcy and restructuring advice and representation, and such corporate, litigation, tax and other advice and representation, as the Debtor requests;

d.	To appear on behalf of and represent the Debtor at hearings, meetings of creditors and other meetings and proceedings, as appropriate;

e.	To represent and advise the Debtor with respect to any adversary proceedings, lawsuits, or other proceeding in which it may be a party or otherwise become involved; and

f.	To perform all other legal services as may be necessary and appropriate in

connection with this Chapter 11, Subchapter V case and in connection with the preparation, confirmation and implementation of one or more plans of reorganization.

Subject to the Court's approval of the Application, Frost is willing to serve as the Debtor's bankruptcy counsel and to perform the services described above.

**Connections with Creditors and Other Parties-In-Interest**

7. In preparing this Declaration, I utilized a set of processes established by Frost to ensure compliance with the requirements of the Bankruptcy Code and the Bankruptcy Rules (and the Maryland Lawyers' Rules of Professional Conduct as to potential or actual conflicts of interest). Frost has taken various steps to determine whether any actual conflicts of interest exist that would preclude Frost's service as bankruptcy counsel. In connection with Frost's proposed representation of the Debtor in this case, I instructed the employees responsible for maintaining Frost's computerized databases of client matters to review such databases to determine whether the databases reflect that Frost has or had any connection with any of the Debtor's creditors, professionals, debenture holders, equity holders, lessors, lenders or vendors (the "Identified Party"). Once the database identified a potential connection between Frost and an Identified Party, an attorney or legal assistant working under my supervision or I contacted the attorney(s) responsible for such other matter and elicited information to discern the nature and scope of the representation or connection with the Identified Party for appropriate disclosure in this Declaration.

8. Based upon the initial review of the computerized database described above and the resulting inquiries, and based upon responses elicited by the memorandum described above and received to date from individual attorneys, I have determined the following:

a. Frost checked against its database the names of the Debtor's largest unsecured creditors and the lists the Debtor provided to us. Frost has not represented any of those parties.

9. Frost's shareholders and employees may have business associations with, professional, familiar or social relationships with, or interests aligned with or adverse to, creditors, shareholders or parties-in-interest, or their attorneys or agents; as far as I have been able to ascertain, none of these

associations or interests has any connection with the Debtor or this case. As part of its practice, Frost regularly appears in cases, proceedings, and transactions in many jurisdictions and works together with or adverse to many different parties, which may include creditors, shareholders or parties-in-interest, or attorneys or accountants who may represent creditors, shareholders or parties-in-interest, in these cases.

10.     To the best of my knowledge, neither Frost nor any shareholder of the firm is:

a.     A creditor, an equity security holder, or an insider of the Debtor;

b.     Within two years before the Petition Date, a director, officer or employee, family member of the Debtor.

11.     To the best of my knowledge, Frost does not have an interest materially adverse to the interests of the estate or of any class of creditors or equity security holders, because of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

12.     To the best of my knowledge, no attorney at Frost is related to any United States District Judge or United States Bankruptcy Judge for the District of Maryland, the United States Trustee, or any employee of the Office of the United States Trustee for such district.

13.     As far as I have been able to ascertain to date, based upon the due diligence described above, Frost (a) is a disinterested person as that term is defined in 11 U.S.C. § 101(14); (b) does not hold or represent an interest adverse to the estate; and (c) except as set forth herein, has no connections with the Debtor or, to the extent identified to Frost and included in the inquiries described, any creditor, any other party-in-interest, their respective attorneys and accountants, the Office of the United States Trustee for this District or anyone employed in that Office.

### Frost's Compensation

14.     Before the filing of this Chapter 11, Subchapter V case, and in contemplation thereof, the Debtor engaged Frost to represent them in connection with financial difficulties which they were experiencing and possibly Chapter 11, Subchapter V proceedings if the Debtor determined a proceeding was advisable in their judgment. Frost received $20,000.00 from the debtor at engagement,

4

and it still holds $5,141.00 in its escrow account. Frost is holding funds as a security retainer for post-petition services, subject to application and allowance by the Court.

15.     The Debtor agrees that to the extent the legal fees, costs, and charges of Frost's bankruptcy services approved by this Court exceed the Retainer, it will pay Frost its normal hourly rates charged to clients of the firm for legal services of this nature, and it will reimburse for Frost's out-of-pocket costs and charges incurred in the performance of those services. Frost's hourly rates for legal services provided by (i) attorneys range from $350.00 per hour to $850.00 per hour, and (ii) paralegals, legal assistants, and law clerks range from $160.00 per hour to $395.00 per hour. The principal attorneys whom I presently believe will be called upon to render material services in connection with this Chapter 11, Subchapter V case (and their hourly rates) are Daniel A. Staeven ($570.00) and Uriel Stern ($375.00). Such rates are subject to change annually as of January 1 to reflect, among other things, increasing seniority within the firm. To the extent Frost's rates change, Frost will provide ten (10) days' notice to the Court, the United States Trustee, all creditors, and parties in interest. Frost may assign different or additional attorneys to this matter (including other bankruptcy, corporate, tax, or litigation attorneys), depending upon the needs of the Debtor and this case.

16.     The hourly rates set forth above are Frost's current, customary hourly rates for work of this nature. It is Frost's policy to charge its clients for photocopying expenses, computerized research, transcription costs, and non-ordinary overhead expenses. Frost intends to apply for compensation for professional services rendered in connection with these cases on an hourly basis and for reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and Orders of this Court.

17.     To the best of my knowledge, no promises have been received by Frost nor any shareholder or associate thereof as to payment or compensation in connection with the above-captioned case other than in accordance with applicable provisions of the Bankruptcy Code. Frost has no agreement with any other entity to share with such entity any compensation received by Frost in connection with the Debtor's bankruptcy case, except as permitted by Bankruptcy Rule 2016(b).

18.     Frost intends to periodically review its database during the pendency of this Chapter 11, Subchapter V case to ensure that no conflict or disqualifying circumstance exists or arises to the extent reasonably possible. If any new relevant fact or relationship is discovered or arises, Frost will, as soon as reasonably practicable after identifying such a matter, file a supplemental declaration with the Court in accordance with Bankruptcy Rule 2014(a).

Dated: January 31, 2025

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

_____ */s/ Daniel A. Staeven*
Daniel A. Staeven