**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

**IN RE:**

**MID-ATLANTIC RHEUMATOLOGY, LLC**

**Debtor**

**Case No. 25-10845**
**Chapter 11, Subchapter V**

---

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTIONS 105(a), 365(a), AND 554(a) OF THE BANKRUPTCY CODE, AUTHORIZING THE DEBTORS TO REJECT A CERTAIN UNEXPIRED LEASE OF NONRESIDENTIAL REAL PROPERTY, NUNC PRO TUNC TO THE PETITION DATE**

**NOW COME** Mid-Atlantic Rheumatology, LLC, Debtor and Debtor-in-Possession, by and through above stated counsel, and hereby submit this motion for the entry of an order pursuant to sections 105(a), 365(a), and 554(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.,* authorizing, but not directing, the Debtors to (i) reject the certain unexpired lease of nonresidential real property (the "Rejected Lease") with Quarterfield 100, LP, effective as of the Petition Date (as defined below), and (ii) abandon, effective as of the Petition Date, any personal property of the Debtors, including, but not limited to, furniture, fixtures, and equipment (collectively, the "Personal Property") that remains, as of the Petition Date, on the premises (the "Premises") subject to the Rejected Lease.

In support of this Motion, the Debtors respectfully state as follows:

### *Jurisdiction and Venue*

1. This Court has jurisdiction over this Chapter 11 Case and this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Pursuant to 28 U.S.C. § 157(b)(2), this is a core proceeding. Venue is proper in this District pursuant to 28 U.S.C. § 1409 because the underlying bankruptcy case is pending in this court. To the extent this Court may lack the authority to enter a final judgment in this matter pursuant to the holdings in *Stern v. Marshall*, 564 U.S. 462 (2011) and *Wellness International Network, Ltd. v. Sharif,* 575 U.S 665 (2015), and pursuant to Rule 7008(a), Applicant consents to this Court's entry of a final judgment.

2. The statutory and legal predicates for the relief requested herein are sections 105(a), 365(a), and 554(a) of the Bankruptcy Code, Rules 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules Rule 6006-1 and 6007-1 (the "Local Rules").

### *Background*

3.      On the Petition Date, January 31, 2025, the Debtor commenced a voluntary case under Chapter 11, Subchapter V of the Bankruptcy Code. The Debtor is authorized to continue to operate their business and manage their property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. To date, no trustee, examiner or statutory committee has been appointed.

4.      Before this case was filed, Debtor moved operations to another location in 2022. The Debtor commenced this case to, among other things, implement an orderly reorganization of this business under the Bankruptcy Code. Prior to the Petition Date, the Debtors unequivocally surrendered the Premises, which served as the Debtor's principal place of business from 2016-2022 and abandoned their interest in the Rejected Lease to the landlord, Quarterfield 100, LP (the "Landlord").

5.      Given the Debtor's move to another location in 2022, the Debtor determined that they no longer had a need to maintain the Premises after the Petition Date. Accordingly, the Debtor's management determined, in consultation with their advisors, that the costs and burdens associated with the Rejected Lease outweigh the benefits of the Premises. Furthermore, the Debtor has determined in their business judgment that it is in their best interests to reject the Rejected Lease, effective as of the Petition Date, thereby avoiding the incurrence of additional expenses that provide no material benefit to the Debtor and the estate during the Chapter 11, Subchapter V case.

6.      In connection with vacating the Premises, the Debtors removed Personal Property that had more than de minimis value or contained sensitive or confidential information. However, certain Personal Property may remain at the Premises (collectively, the "Abandoned Personal Property"). The Debtors expect that it will be difficult and potentially expensive to remove and/or store the Abandoned Personal Property, relative to its value, such that the economic benefits of removing and/or storing some or all of the Abandoned Personal Property will be exceeded by the attendant costs thereof. The Debtors unequivocally abandoned the Abandoned Personal Property when they vacated the Premises. However, out of an abundance of caution, the Debtors request that the Court authorize the Debtors to abandon the Abandoned Personal Property on the Premises as of the Petition Date.

### *Relief Requested*

7.      By this Motion, and in order to preserve and maximize the value of the estate, the Debtors seek to reject the Rejected Lease, as of the Petition Date, as the Debtors have determined that the Rejected Lease is no longer integral to the Debtor's Chapter 11, Subchapter V efforts, is not otherwise beneficial to the Debtor's estate, and presents burdensome liabilities. In addition, the

Debtor seeks to abandon, effective as of the Petition Date, any Abandoned Personal Property that remains as of such date on the Premises. Considering the Debtors' efforts to preserve and maximize the value of the estate, and to avoid incurring costs and expenses that are no longer integral to the Debtor's business operations and their Chapter 11, Subchapter V efforts, the Debtor submits that this related relief is necessary and appropriate.

### *Basis for Relief*

I.      REJECTION OF THE REJECTED LEASE NUNC PRO TUNC TO THE PETITION DATE REFLECTS THE DEBTORS' SOUND BUSINESS JUDGMENT

8.      Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor-in-possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." As courts have held, "The purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 4 F.3d 1095, 1098 (2d Cir. 1993) (quoting 2 Collier on Bankruptcy ¶ 365.01[1] (15th ed. 1993)).

9.      The standard applied to determining whether the rejection of an unexpired lease should be authorized is the "business judgment" standard. *See In the Matter of Tilco, Inc.,* 558 F.2d 1369 (10th Cir. 1977). Once a debtor states a valid business justification, "The business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.),* 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del. 1985)).

10.      The business judgment rule is crucial in Chapter 11, Subchapter V cases and shields a debtor's management from judicial second-guessing. *See Comm. of Asbestos Related Litigants and/or Creditors v. Johns-Manville Corp.,* 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("The Code favors the continued operation of a business by a debtor and a presumption of reasonableness attached to a debtor's management decisions"). Generally, courts defer to a debtor-in-possession's business judgment to reject a lease. *See, e.g., NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 523 (1984); *In re Minges,* 602 F.2d 38, 43 (2d Cir. 1979); *In re Riodizio,* 204 B.R. 417, 424–25 (Bankr. S.D.N.Y. 1997); *In re G Survivor Corp.,* 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994).

11.      Upon finding that the Debtors have exercised their sound business judgment in determining that rejection of the Rejected Lease is in the best interests of the Debtors and the estate, the Court should approve the proposed rejections under section 365(a) of the Bankruptcy

Code. *See, e.g., Westbury Real Estate Ventures, Inc. v. Bradlees, Inc. (In re Bradlees Stores, Inc.),* 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996); *see also Summit Land Co. v. Allen (In re Summit Land Co.),* 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that, absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course"). If a debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease. *See, e.g., Sharon Steel Corp.,* 872 F.2d at 39–40.

12.    As an integral component of their efforts to preserve and maximize the value of the estate and reduce their potential administrative costs in this Chapter 11, Subchapter V case by, among other things, eliminating unnecessary costs, the Debtor has determined, in their business judgment, that the Rejected Lease is burdensome and provides no economic value to the estate. Because the Premises was used as the primary place of business of the Debtor and the Debtor no longer has employees to use this space, the Premises serves no go-forward purpose for the Debtors and rent and expenses incurred in connection therewith would drain the Debtor's estate and hinder their Chapter 11, Subchapter V reorganization efforts. The Debtor also believes that any continued expense in maintaining the Rejected Lease and attempting to market such agreement would likely outweigh, if not eclipse, any benefit in attempting to identify a potential acquirer of the Rejected Lease and unnecessarily deplete assets of the Debtors' estate, to the detriment of creditors. In contrast, rejection of the Rejected Lease will represent a significant monthly cost savings to the Debtor's estate moving forward.

13.    To avoid paying any unnecessary expenses related to the Rejected Lease, the Debtors seek to reject the Rejected Lease *nunc pro tunc* to the Petition Date. Courts in other jurisdictions have routinely authorized a debtor's retroactive rejection of unexpired leases. *See In re Chi-Chi's, Inc.,* 305 B.R. 396, 399 (Bankr. D. Del. 2004); *see also In re Fleming Cos., Inc.,* 304 B.R. 85, 96 (Bankr. D. Del. 2003) (rejection *nunc pro tunc* permitted to the date of the motion or the date the premises surrendered). Here the premises were surrendered prior the Petition Date with the final date for turnover of the Premises and Abandoned Property on the Petition Date.

14.    The facts in this Chapter 11, Subchapter V case and the balance of the equities favor the Debtor's rejection of the Rejected Lease *nunc pro tunc* to the Petition Date. Without a retroactive date of rejection, the Debtors may incur administrative charges that are unnecessary to their operations or the Debtor's Chapter 11, Subchapter V efforts to reorganize. Moreover, the Landlord will not be unduly prejudiced if the Rejected Lease is rejected *nunc pro tunc* to the Petition Date because the Premises were abandoned by notice prior the Petition Date, and, in conjunction therewith, indicated that they were unequivocally surrendering possession to the

Landlord as of such date. Therefore, based on the Debtor's need to eliminate potential administrative claims against the estate, and to avoid the potential accrual of any further obligations under the Rejected Lease, the Debtors respectfully submit that the retroactive rejection of the Rejected Lease as of the Petition Date is appropriate.

15.    In light of the foregoing facts and circumstances, the Debtor respectfully submits that their rejection of the Rejected Lease under section 365(a) of the Bankruptcy Code, nunc pro tunc to the Petition Date, is a sound exercise of their business judgment and is necessary, prudent, and in the best interests of the Debtors, the estate, and their *creditors*.

Accordingly, entry of the proposed form of order is appropriate.

II.    AUTHORIZING THE DEBTORS TO ABANDON ANY PERSONAL PROPERTY REMAINING AT THE PREMISES AS OF THE PETITION DATE IS APPROPRIATE

16.    In the event that any Abandoned Personal Property remains on the Premises as of the Petition Date, the Debtors request that the Court authorize Debtors to abandon the Abandoned Personal Property pursuant to section 554(a) of the Bankruptcy Code, effective as of the Petition Date.

17.    Section 554(a) of the Bankruptcy Code provides that, "After notice and a hearing, the [debtor] may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." The right to abandon is virtually unfettered, unless abandonment of the property contravenes laws designed to protect public health and safety and the property poses an imminent threat to the public's welfare. *See In re Midlantic Nat'l Bank,* 474 U.S. 494, 501 (1986). Neither of these limitations is relevant under the circumstances.

18.    The Debtor submits that any Abandoned Personal Property is of inconsequential value or burdensome to the Debtor's estate to remove. Among other things, the Debtor believes that the cost of retrieving, marketing, and reselling the Abandoned Personal Property outweighs any recovery that the Debtor and the estate could reasonably hope to attain for such Abandoned Personal Property. As a result, the Debtor has determined, in their business judgment, that the abandonment of any such Abandoned Personal Property, effective as of the Petition Date, is a sound exercise of their business judgment, and is necessary, prudent, and in the best interests of the Debtor, the estate, and creditors.

*Reservation of Rights*

19.    The Debtor may have claims against the Landlord arising under, or independently of, the Rejected Lease. The Debtors do not waive such claims by the filing of this Motion or by the

rejection of the Rejected Lease. Nothing contained herein is intended to be or should be construed as an admission of the validity of any claim against the Debtors or a waiver of the Debtors' rights to dispute any claim, and nothing shall prejudice any party's rights to assert that the Rejected Lease is not, in fact, executory within the meaning of section 365 of the Bankruptcy Code.

### *Notice*

20.     Notice of this Motion has been given to (i) the Office of the United States Trustee for the District of Maryland, Baltimore; (ii) holders of the ten (10) largest unsecured claims against the Debtor based on the Local Rules; (iii) the Landlord; (iv) the Landlord's representative at SEAWALL; and (vi) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

### *Conclusion*

**WHEREFORE,** the Debtors respectfully request that the Court enter an order granting the relief requested herein and such other and further relief as is just and proper.

Date: January 31, 2025                              Respectfully Submitted,

*/s/ Daniel A. Staeven*
Daniel A. Staeven
FROST LAW
839 Bestgate Rd. Ste. 400
Annapolis MD 21401
daniel.staeven@askfrost.com
*Counsel for Debtor*