<u>OFFICE LEASE</u>

THIS LEASE ("Lease") is made and entered into as of ___July___ _10_, 2015 (the "Effective Date") by and between **QUARTERFIELD 100, LP**, a Maryland limited partnership ("Landlord") and **MID-ATLANTIC RHEUMATOLOGY,** LLC a Maryland ("Tenant"). Corporation

In consideration of the rents hereinafter reserved and the agreements hereinafter set forth, Landlord and Tenant mutually agree as follows:

1.    <u>SUMMARY OF KEY TERMS</u>.

The following is a summary of the principal terms of the Lease. Any capitalized term set forth below shall, for the purposes of this Lease, shall have the meaning ascribed to it in this Section

A.    <u>Description of Premises</u>

(1)    <u>Building</u>: The building having an address of 7671 Quarterfield Road, Glen Burnie, Maryland 21061, consisting of approximately of forty six thousand eighty nine (46,089) square feet of rentable office space as well as the Common Area (as defined in Section 8.1).

(2)    <u>Premises</u>: Approximately one thousand eight hundred fifty nine (1,859) square feet of space ("Rental Area") on the third (3rd) floor of the Building as shown on <u>Exhibit A</u>, known as Suite 330. 300 ber

B.    <u>Rent</u>

(1)    <u>Annual Basic Rent</u>: The monthly payments of Annual Basic Rent for the Premises shall be as follows:

| Months | Base Rent PSF | Annual Basic Rent | Monthly Basic Rent |
|---|---|---|---|
| 1-3 | $0.00 | $0.00 | $0.00 |
| 4 – 15 | $25.50 | $47,404.50 | $3,950.38 |
| 16 – 27 | $25.50 | $47,404.50 | $3,950.38 |
| 28 – 39 | $26.01 | $48,352.59 | $4,029.38 |
| 40 – 51 | $26.53 | $49,319.27 | $4,109.94 |
| 52 – 63 | $27.06 | $50,304.54 | $4,192.05 |
| 64 – 75 | $27.60 | $51,308.40 | $4,275.70 |
| 76 – 87 | $28.15 | $52,330.85 | $4,360.90 |
| 88 – 99 | $28.71 | $53,371.89 | $4,447.66 |
| 100 – 111 | $29.28 | $54,431.52 | $4,535.96 |
| 112 – 123 | $29.87 | $55,528.33 | $4,627.36 |

Upon the execution of this Lease, Tenant shall pay to Landlord the Security Deposit and its first payment of Monthly Basic Rent. As shown on the foregoing chart, Monthly Basic Rent shall be abated for the first ninety (90) days following the Lease Commencement Date.

(2)    Tenant's Share: Tenant shall pay (as additional rent) Tenant's Share of utilities and cleaning services to the Building. The combination of Annual Basic Rent and additional rent as described in this Section is sometimes collectively referred to in this Lease as "Rent". "Tenant's Share" shall equal a fraction, the numerator of which is the total rentable square footage of the Premises, and the denominator of which is the total rentable square footage of the Building. Tenant's Share as of the date of execution of this Lease is 4.03% (calculated as 1,859/46,089).

(3)    Security Deposit: As security for the performance of Tenant's obligations under this Lease, simultaneously with the execution of this Lease by Tenant, Tenant shall deliver to Landlord a payment in the amount of Three Thousand Nine Hundred Fifty and 38/100 Dollars ($3,950.38) as security for the payment of Annual Basic Rent and additional rent and for any and all other obligations of Tenant under this Lease.

C.    Term

(1)    Term: One hundred twenty three (123) months, subject to Section 4.

(2)    Renewal Term: Two (2) renewal options of five (5) years (each referred to herein as a "Renewal Term") each provided Tenant gives Landlord written notice of its intent to exercise such Renewal Term at least one hundred twenty (120) days prior to the expiration of the Term or then existing Renewal Term (as the case may be).

(3)    Lease Commencement Date: The earlier of (a) September 1, 2015, or (b) such date Tenant accepts possession of the Premises.

(4)    Rent Commencement Date: Ninety (90) days from the Lease Commencement Date.

(5)    Termination Date: The last day of the calendar month in which the tenth (10th) anniversary of the Rent Commencement Date shall occur, unless Tenant exercises any Renewal Term, as set forth herein.

(6)    Early Termination: Tenant shall have a one-time option to terminate the Lease ("Tenant's Termination Right") at the end of the sixty-sixth (66th) month of the Term, provided Tenant delivers written notice to Landlord at least one hundred eighty (180) days prior to the sixty-sixth (66th) month of the Term. In the event Tenant exercises Tenant's Termination Right, Tenant shall be responsible to pay Landlord any unamortized leasing commissions.

D.    Notice and Payment

(1)    Tenant Notice Address:

Dr. Erinn Maury
1728 S. Charles Street
Baltimore, MD 21230

(2)    Landlord Notice Address:

QUARTERFIELD 100, LP
2410 EVERGREEN ROAD, SUITE 104
GAMBRILLS, MD  21054
ATTN: SHANNON T. SMITH

With a copy to:

MULRENIN & ASSOCIATES, LLC
1919 WEST STREET, SUITE 200
ANNAPOLIS, MD 21401
ATTN:  THOMAS J. MULRENIN, ESQ.

2.    LEASED PREMISES.

Landlord hereby leases to Tenant, and Tenant hereby leases from Landlord, the Premises as shown on the plan attached hereto as Exhibit A, together with the right to use, in common with others, the Common Area (as defined in Section 8.1).

3.    IMPROVEMENTS AND ACCEPTANCE OF PREMISES.

3.1    Landlord Improvements.  Landlord has made improvements to the Premises ("Landlord Improvements") as a new medical suite.  Tenant shall be responsible to reimburse Landlord for completing the final plumbing and millwork in the Premises as more particularly described on Exhibit B attached hereto ("Landlord's Work").  As a component of Landlord's Work, Landlord will also provide floor covering and paint. Tenant shall have the opportunity to select the paint color and laminate color from Landlord's standard samples, provided Tenant delivers written notice of such selections within thirty (30) days following the Effective Date.  Any other initial improvements to the Premises not mentioned above are subject to Landlord's prior approval and shall be at Tenant's sole cost and expense.  Tenant shall not be permitted to occupy the Premises until payment for Landlord's Work is delivered in full.

3.2    Condition of the Premises.  Other than Landlord Improvements described in Section 3.1 above, Landlord delivers and Tenant accepts the Premises on an "AS, IS, WHERE IS" basis. Landlord makes no representation or warranty as to the suitability of the Premises for Tenant's specific use.

3.3     Tenant's Work. Tenant shall be responsible, at its sole cost and expense, for completing all other work necessary at the Premises for the Permitted Use (as hereinafter defined) other than Landlord Improvements ("Tenant's Work"). Tenant's Work shall include, without limitation, moving or installation of telephone and computer systems, wiring or cabling, or the acquisition, moving or installation of Tenant's furnishings, fixtures and equipment in the Premises.

4.     RENT.

4.1     Annual Basic Rent. Tenant shall pay to Landlord during each Rental Year of the Term, or any Renewal Term, if applicable, fixed rent equal to the Annual Basic Rent as set forth in Section 1.B.(1). Annual Basic Rent shall be payable in advance on the first day of each month of the Term in equal monthly installments, without notice, demand, abatement (except as otherwise specifically provided in this Lease), deduction or set-off. If the Term of this Lease shall commence on a day other than the first day of a month, the first payment shall include any prorated Annual Basic Rent for the period from the Lease Commencement Date to the first day of the first full calendar month of the Term.

"Rental Year" shall mean each successive twelve (12) calendar month period occurring during the Term of this Lease, or portion of such a period, with the first Rental Year commencing as of the Rent Commencement Date and ending on the last day of the twelfth full calendar month thereafter and the last Rental Year ending on the Termination Date. For any Rental Year of less or more than twelve full months, Annual Basic Rent shall be adjusted accordingly. All Annual Basic Rent and Additional Rent shall be paid to Landlord at the Landlord Payment Address.

4.2     Additional Rent. Tenant shall pay to Landlord as additional rent ("Additional Rent") all other sums of money which shall become due and payable hereunder. Unless a date for payment is otherwise specified herein, all Additional Rent shall be due and payable within thirty (30) days of invoicing by Landlord.

4.3     Commencing on January 1, 2017, as Additional Rent, Tenant shall pay to Landlord, Tenant's Share of all Taxes (as hereinafter defined), Insurance Costs (as hereinafter defined), and Common Area Maintenance Costs (as hereinafter defined) (collectively, the "Operating Expenses"), payable by Landlord for the then-current calendar year (or other fiscal or accounting year selected by Landlord) in excess of the Operating Expenses paid by Landlord for 2016 fiscal year (the "Base Year"). Notwithstanding the foregoing, at Landlord's option, Tenant's Share may be appropriately adjusted with regard to Operating Expenses to exclude from the denominator thereof any space in the in Building leased to or occupied by third parties with separate tax lots or parcels for which they directly or indirectly pay taxes and/or who are responsible for maintenance of portions of the Common Areas; provided that in such event the Operating Costs paid by such third parties shall also be excluded in the computation of Operating Costs.

4.4     For purposes of this Lease, the term "Taxes" shall mean and include, without limitation, all taxes, both real and personal, public and governmental charges and assessments, and all other taxes, assessments, levies, excise and other charges which Landlord is obligated to pay to governmental authorities with respect to the Building, including any new direct or indirect tax or surcharge against the Building, the parking areas, or the number of parking spaces in the Building or any new direct or indirect tax or surcharge in addition to or by way of substitution for any existing

tax or assessment which Landlord becomes obligated to pay with respect to the Building, all extraordinary or special assessments or assessments against any of Landlord's personal property now or hereafter located in the Building, any assessments, fees or other charges from any property owners association on which the land within the Building may be subject to, all costs and expenses including, but not limited to consulting, appraisal and attorneys' fees incurred by Landlord in contesting as to any of the same and all sewer, water and other utility taxes and impositions, but shall not include taxes on Tenant's furniture, trade fixtures, machinery, equipment, inventory or other personal property or assets of Tenant, Tenant agreeing to pay before delinquency all taxes upon or attributable to such excluded property without apportionment. Taxes shall not include interest and penalties due on delinquent Taxes. Notwithstanding the foregoing, if at any time during the Lease Term the present method of taxation or assessment shall be changed so that the whole or any part of taxes, assessments, excises, levies, or other charges now assessed, levied, charged, conformed, or imposed upon the Premises, the Building, or appurtenances or facilities thereto shall be discontinued or reduced and as a substitute therefore or in lieu thereof a tax, assessment, excise, levy or other charge shall be assessed, levied, charged, confirmed or imposed whether wholly or partially as a special assessment or otherwise on rents, income, profits, sales or gross receipts derived from the Building, then the substitute tax, assessment, excise, levy, or other charge shall be deemed included within the term "Taxes".

5.     ELECTRICAL UTILITY. Within five (5) days of being provided an invoice thereof from Landlord, Tenant shall pay to Landlord Tenant's Share of monthly electrical utility services provided to the Building.

6.     USE, CARE AND REPAIR OF PREMISES BY TENANT.

6.1     Permitted Use. Tenant shall use and occupy the Premises solely for general medical office purposes in accordance with applicable zoning regulations and for no other purpose (the "Permitted Use"). Tenant shall not do anything or permit anything to be done in or on the Premises, or bring or keep anything therein which will, in any way, obstruct, injure, annoy or interfere with the rights of Landlord or other tenants, or subject Landlord to any liability for injury to persons or damage to property, or interfere with the good order of the Building, or conflict with the laws, rules or regulations of any Federal, state or city authority. Further, Tenant shall not be permitted to perform surgical operations or procedures within the Premises or place any of its patients under general or twilight anesthesia within the Premises, without first obtaining Landlord's written consent, which consent shall not be unreasonably withheld.

6.2     Care of Premises. Tenant shall, at its sole expense, keep the Premises and the improvements and appurtenances therein, together with all electrical, plumbing, HVAC systems, and other mechanical installations therein in good order and repair and will make all replacements from time to time required thereto at its expense, consistent with the operation of a first-class office building, and at the expiration of the Term or Renewal Term, if applicable, or at the sooner termination of this Lease as herein provided, deliver up the same broom clean and in as good order and condition as obtained after the completion of Landlord Improvements, ordinary wear and tear and damage by fire or other casualty excepted. Tenant shall be responsible for a full service maintenance contract for the HVAC system serving the Premises, from a HVAC contractor reasonably acceptable to Landlord, and shall be responsible for routine maintenance, semiannual preventive maintenance and repairs. Tenant will not overload the electrical wiring servicing the Premises or within

the Premises, and will install at its expense, subject to the prior written consent of Landlord, any additional electrical wiring which may be required in connection with Tenant's apparatus, occupation or use of the Premises. Tenant, at its sole expense, shall promptly replace damaged or broken doors and glass in and about the interior of the Premises and shall be responsible for the repair and maintenance of all special or custom Landlord Improvements (as defined in Section 3.1), including, without limitation, the repair and replacement of appliances and equipment installed specifically for Tenant such as refrigerators, disposals, computer room air conditioning, sinks and special plumbing, special light fixtures and bulbs for those fixtures, non-standard outlets and plug-in strips, and special cabinetry. Consistent with the provisions of Section 6.1, Tenant shall pay for all property damage sustained by other tenants or occupants of the Building, due to any waste, misuse or neglect by Tenant of the Premises and any fixtures and appurtenances related thereto or due to any breach of this Lease by Tenant, its employees, agents, representatives or invitees.

6.3     Hazardous Substances. For purposes of this provision, "Hazardous Substances" shall mean any hazardous or toxic substance, material or waste, now or hereafter defined or regulated under the Resource Conservation and Recovery Act (42 U.S.C. § 6901 et seq.), the Comprehensive Environmental Response, Compensation, and Liability Act (42 U.S.C. § 9601 et seq.), the Clean Water Act (33 U.S.C. § 1251 et seq.), the Clean Air Act (42 U.S.C. § 7401 et seq.), and the Toxic Substances Control Act (15 U.S.C. § 2601 et seq.), and all similar federal, state and local statutes, laws, rules and regulations in connection with environmental conditions, health and safety, including without limitation, asbestos and petroleum products (collectively, "Environmental Laws"). Tenant covenants and agrees that it will not use or allow the Premises to be used for the storage, use, treatment or disposal of any Hazardous Substance, without Landlord's prior written consent. Notwithstanding the foregoing, Landlord's prior written consent shall not be required with respect to Tenant's use, storage or sale of certain supplies or products, which might contain or might be considered a Hazardous Substance, in the normal course of Tenant's business in accordance with the specific use permitted by this Lease, provided, however, that Tenant shall (i) comply with all other provisions of this Section; (ii) notify Landlord in writing from time to time of the identity and approximate quantity of such Hazardous Substance; and (iii) keep each such Hazardous Substance on the Premises in quantities as small as reasonably practicable, but in no event large enough to activate reporting requirements under any Environmental Law. Tenant, at Tenant's sole cost and expense shall promptly contain and remediate any release of a Hazardous Substance on the Building to the extent such release arises directly from the actions of Tenant, its agents, servants and employees.

Tenant shall indemnify, reimburse and hold harmless Landlord, its partners and affiliates agents from and against any damages, claims, judgments, fines, penalties, costs, liabilities (including sums paid in settlement of claims) or loss including reasonable attorneys' fees, reasonable consultants' fees, and reasonable expert fees incurred by any of them to the extent resulting from Tenant's use, handling, generation, treatment, storage, disposal, other management or release of any Hazardous Substance at or from the Premises or the Building, whether or not Tenant has acted negligently with respect to such Hazardous Substance. This indemnity shall survive the expiration or earlier termination of this Lease. Landlord shall indemnify, reimburse and hold harmless Tenant, its partners and affiliates agents from and against any damages, claims, judgments, fines, penalties, costs, liabilities (including sums paid in settlement of claims) or loss including reasonable attorneys' fees, reasonable consultants' fees, and reasonable expert fees incurred by any of them to the extent resulting from violations of Environmental Laws existing as of the date hereof or are caused by

Landlord's, its agents, employees, contractors, officers and affiliates gross negligence and/or willful misconduct.

6.4     Compliance with Laws. Tenant, at its sole cost and expense, shall conform to and comply with and shall cause the Premises to conform to and comply with all federal, state, county, municipal and other governmental statutes, laws, rules, orders, regulations, and ordinances applicable to Tenant or resulting from Tenant's particular use or occupancy of the Premises or the Building or any part thereof.

7.     RULES AND REGULATIONS.

Tenant and its agents and invitees shall abide by and observe the rules and regulations which may from time to time be issued by Landlord ("Rules and Regulations"), provided that any rules or regulations do not increase the financial obligations of Tenant nor materially increase Tenant's obligations under this Lease. Nothing in this Lease shall be interpreted to impose upon Landlord any duty or obligation to enforce any such rules and regulations against any other tenant in the Building, and Landlord shall not be liable to Tenant for any violation of these rules and regulations by any other tenant or its agents or invitees, except in no event shall such Rules and Regulations be discriminatorily enforced against Tenant by Landlord.

8.     COMMON AREA.

8.1     Definition of Common Area. As used herein, "Common Area" means those areas and facilities which may be furnished by Landlord on or near the Building, as designated by Landlord from time to time, intended for the general common use and benefit of all tenants of the Building and their agents, representatives, licensees, employees and invitees, including, without limitation, any and all stairs, landings, roofs, utility and mechanical rooms and equipment, service closets, corridors, elevators, lobbies, lavatories and other public areas of the Building and all parking areas, access roads, pedestrian walkways, plazas and landscaped areas.

8.2     Use of Common Area. Tenant shall have the non-exclusive right to use the Common Area in common with Landlord, other tenants in the Building, and others entitled to the use thereof, subject to such reasonable rules and regulations governing the use of the Common Area as Landlord may from time to time prescribe and subject to such easements therein as Landlord may from time to time grant to others. Tenant shall not obstruct in any way any portion of the Common Area or in any way interfere with the rights of other persons entitled to use the Common Area and shall not, without the prior written consent of Landlord, use the Common Area in any manner, directly or indirectly, for the location or display of any merchandise or property belonging to Tenant or for the location of signs relating to Tenant's operations in the Premises. The Common Area shall at all times be subject to the exclusive control and management of Landlord.

8.3     Alterations to the Common Area. Landlord reserves the right at any time and from time to time (i) to change or alter the location, layout, nature or arrangement of the Common Area or any portion thereof, including but not limited to the arrangement and/or location of entrances, passageways, doors, corridors, stairs, lavatories, elevators, parking areas, and other public areas of the building, and (ii) to construct additional improvements on the Building and make alterations thereof or additions thereto and build additional stories on or in any such buildings or build adjoining

same; provided, however, that no such change or alteration shall materially adversely affect Tenant's access to the Premises, parking in the Common Area or reduce the Rental Area of the Premises. Landlord shall have the right to close temporarily all or any portion of the Common Area to such extent as may, in the reasonable opinion of Landlord, be necessary to prevent a dedication thereof to the public, provided that Tenant is not thereby substantially hindered in its access to the Premises, or for repairs, replacements or maintenance to the Common Area, provided such repairs, replacements or maintenance are performed expeditiously and in such a manner as not to substantially hinder Tenant's access to the Premises.

8.4    Maintenance. Landlord covenants to keep, maintain, manage and operate the Common Area in a manner consistent with the operation of a first class office building and to keep the sidewalks and driveways, if any, constituting a portion of the Common Area clean and reasonably clear of snow and ice. Landlord reserves the right of access to the Common Area through the Premises for the purposes of cleaning, maintenance, safety, security, alterations and repairs. All expenses Landlord realizes to keep, maintain, manage, and operate the Common Areas shall be herein known as "Common Area Maintenance Costs".

9.    SERVICES AND UTILITIES.

9.1    Tenant's Expense. So long as an Event of Default by Tenant is not then continuing under this Lease, Landlord shall provide the following facilities and services to Tenant, the cost of such facilities and services to be included in Tenant's Share (except as otherwise provided herein):

A.    Twenty four (24) hours a day, seven (7) days a week, central heating and air conditioning during the seasons of the year when these services are normally and usually furnished, and within the temperature ranges and in such amounts normally or usually furnished in comparable office buildings in the immediate vicinity.

B.    Reasonable amounts of electric current to the Building for lighting and normal and customary items of office equipment (subject to the provisions of Section 10 below).

9.2    Landlord's Expense. Landlord shall provide the following facilities and services to Tenant, at Landlord's sole cost and expense:

A.    Janitorial services to the Common Area in Landlord's standard manner.

B.    Water utility service in and to the Common Area and the Premises.

C.    Replacement of light tubes or bulbs for building standard lighting fixtures in the Common Area.

D.    Rest room facilities and necessary lavatory supplies, including hot and cold running water at the points of supply, as provided for general use of all tenants in the Common Area of the Building and routine maintenance, painting, and electric lighting service for the Common Area of the Building in such manner as Landlord deems reasonable.

Any failure by Landlord to furnish the foregoing services, resulting from circumstances beyond Landlord's reasonable control or from interruption of such services due to repairs or maintenance, shall not render Landlord liable in any respect for damage to either person or property, nor be construed as an eviction of Tenant, nor cause an abatement of rent hereunder, nor relieve Tenant from any of its obligations hereunder. If any public utility or governmental body shall require Landlord or Tenant to restrict the consumption of any utility or reduce any service for the Premises or the Building, Landlord and Tenant shall comply with such requirements, whether or not the utilities and services referred to in this Section 9.2 are thereby reduced or otherwise affected, without any liability on the part of Landlord to Tenant or any other person or any reduction or adjustment in rent payable hereunder. Landlord and its agents shall be permitted reasonable access to the Premises for the purpose of installing and servicing systems within the Premises deemed necessary by Landlord to provide the services and utilities referred to in this Section 9.2 to Tenant and other tenants in the Building.

Tenant shall be responsible, at its sole cost and expense, for all janitorial services and costs within the Premises, including removal of its and trash and medical bi-products and waste. Tenant shall also be responsible, at its sole cost and expense, for the installation and usage of its telephone and data plan service.

Tenant shall be permitted to access the Premises twenty four (24) a day, seven (7) days a week.

10.   ELECTRIC CURRENT.

Landlord shall be under no obligation to furnish electrical energy to Tenant in amounts greater than needed for lighting and normal and customary items of equipment for general medical office purposes, and Tenant shall not install or use on the Premises any electrical equipment, appliance or machine which shall require amounts of electrical energy exceeding the standard wattage provided for the Building, unless the installation and use of such additional electrical equipment, appliance, or machine has been approved by Landlord pursuant to terms and conditions set forth in a separate agreement, which approval may be conditioned upon the payment by Tenant, as Additional Rent, of the cost of the additional electrical energy and modifications to the Building's electrical system required for the operation of such electrical equipment, appliance, or machine.

11.   LOSS. DAMAGE AND INJURY.

To the maximum extent permitted by law, Tenant shall occupy and use the Premises, the Building and the Common Area at Tenant's own risk. Consistent with the provisions of subsection 16.4, Tenant's Personal Property and personal items of those claiming by, through or under Tenant, located in or on the Premises or the Building shall be and remain at the sole risk of Tenant or such other person.

No representation, guaranty, assurance, or warranty is made or given by Landlord that the communications or security systems, devices or procedures used, if any, will be effective to prevent injury to Tenant or any other person or damage to, or loss (by theft or otherwise) of any of Tenant's Personal Property or of the property of any other person, and Landlord reserves the right to

discontinue or modify at any time such communications or security systems, devices, or procedures without liability to Tenant.

## 12. REPAIRS BY LANDLORD.

Landlord shall be responsible for repair and replacement of the structure, roof (including skylights), foundation, exterior walls, window frames and all other structural components of the Building. Landlord shall keep the Building and all machinery, equipment, fixtures and systems of every kind attached to, or used in connection with the operation of, the Building, including all electrical, heating, mechanical, sanitary, sprinkler, utility, power, plumbing, cleaning, refrigeration, ventilating, air conditioning and elevator systems and equipment (excluding, however, lines, improvements, systems and machinery for water, gas, steam and electricity owned and maintained by any public utility company or governmental agency or body) in good order and repair consistent with the operation of the Building as a first-class office building. Notwithstanding the foregoing, Landlord, at its expense, shall make all repairs and replacements necessary to comply with its obligations set forth in the immediately preceding sentence, except for (a) repairs required to be made by Tenant pursuant to Section 6.2 herein and (b) repairs caused by the gross negligence and/or willful misconduct of Tenant, its agents, employees, invitees and guests, which repairs shall be made by Landlord at the cost of Tenant, and for which Tenant shall pay promptly, as Additional Rent, upon receipt of an invoice setting forth the cost of such repairs. There shall be no abatement in rents due and payable hereunder and no liability on the part of Landlord by reason of any inconvenience or annoyance arising from Landlord's making repairs, additions or improvements to the Building in accordance with its obligations hereunder.

## 13. ALTERATIONS, TITLE AND PERSONAL PROPERTY.

13.1   Alterations.  Tenant shall in no event make or permit to be made any improvements, alterations, fixed decorations, substitutions or modifications, structural or otherwise, to the Premises or the Building ("Alterations") without the approval of Landlord, which approval may be withheld in Landlord's sole and absolute discretion. Alterations shall include, but not be limited to, the installation or modification of carpeting, walls, partitions, counters, doors, shelves, lighting fixtures, hardware, locks, ceiling, window and wall coverings. All Alterations shall be based on complete plans and specifications prepared and submitted by Tenant to Landlord for approval, except in the instance of cosmetic changes, such as painting and carpeting, in which case Tenant shall provide Landlord with samples showing colors, styles, etc. All Alterations shall be made by Landlord at Tenant's sole cost, payable by Tenant, as Additional Rent, within thirty (30) days after receipt of an invoice for same from Landlord, which cost shall include Landlord's standard construction management fee. Tenant shall be responsible for the cost of any additional improvements within the Premises or the Common Area required by The Americans with Disabilities Act of 1990 as a result of Tenant's Alterations.

If Tenant makes any Alterations without the consent of Landlord, then, in addition to Landlord's other remedies, Landlord may correct or remove such Alterations and Tenant shall pay the cost thereof, as Additional Rent, on demand.

13.2   Title.  The Landlord Improvements, all Alterations and all equipment, machinery and other property or improvements installed or located in the Premises by or on behalf of Landlord or

Tenant, other than Tenant's Personal Property, (a) shall immediately become the property of Landlord and (b) shall remain upon and be surrendered to Landlord with the Premises as a part thereof at the end of the Term. Notwithstanding the foregoing, Landlord may, upon notice to Tenant at the time Alterations are made, elect that any Alterations be removed at the end of the Term, and thereupon, Landlord shall at Tenant's sole expense, cause such Alterations to be removed and restore the Premises to its condition prior to the making of such Alterations, reasonable wear and tear excepted. Tenant shall promptly reimburse Landlord, as Additional Rent, for the cost of such work, which reimbursement obligation shall survive termination of the Lease.

13.3    Tenant's Personal Property. "Tenant's Personal Property" means all equipment, machinery, furniture, furnishings and/or other property now or hereafter installed or placed in or on the Premises by and at the sole expense of Tenant with respect to which Tenant has not been granted any credit or allowance by Landlord and which (a) is not used, or was not procured for use, in connection with the operation, maintenance or protection of the Premises or the Building; (b) is removable without damage to the Premises or the Building; and (c) is not a replacement of any property of Landlord, whether such replacement is made at Tenant's expense or otherwise. Notwithstanding any other provision of this Lease, Tenant's Personal Property shall not include any Alterations or any improvements or other property installed or placed in or on the Premises as part of Landlord Improvements, whether or not installed at Tenant's expense. Tenant shall promptly pay all personal property taxes on Tenant's Personal Property, as applicable. Provided that Tenant is not then in default of any of its obligations under this Lease, Tenant may remove all Tenant's Personal Property from the Premises at the termination of this Lease. Any property belonging to Tenant or any other person which is left in the Premises after the date the Lease is terminated for any reason shall be deemed to have been abandoned. In such event, Landlord shall have the right to declare itself the owner of such property and to dispose of it in whatever manner Landlord considers appropriate without waiving its right to claim from Tenant all expenses and damages caused by Tenant's failure to remove such property, and Tenant shall not have any right to compensation or claim against Landlord as a result.

14.    INSURANCE.

14.1    Tenant's Insurance. Tenant, at its expense, shall obtain and maintain in effect as long as this Lease remains in effect and during such other time as Tenant occupies the Premises or any part thereof insurance policies in accordance with the following provisions.

A.    Coverage.

(i)    commercial general liability insurance policy, including insurance against assumed or contractual liability under this Lease, with respect to the Building, to afford protection with limits, per occurrence, of not less than One Million and No/100 Dollars ($1,000,000.00), combined single limit, with respect to personal injury, bodily injury, including death, and property damage and Two Million and No/100 Dollars ($2,000,000.00) aggregate (occurrence form), such insurance to provide for reasonable deductible;

(ii)    "Special Form" property insurance policy, including theft, written at replacement cost value and with replacement cost endorsement, covering all of Tenant's Personal Property in the

Premises, and covering loss of income resulting from casualty, such insurance to provide for reasonable deductible.

(iii) worker's compensation or similar insurance policy offering statutory coverage and containing statutory limits, which policy shall also provide Employer's Liability Coverage of not less than Five Hundred Thousand and No/100 Dollars ($500,000.00) per occurrence. Notwithstanding the foregoing, Landlord hereby acknowledges Tenant's operation shall not initially employ employees and during such time, Tenant shall not be required to carry the insurance required herein. Tenant hereby covenants and agrees to carry the foregoing worker's compensation or similarly insurance policy upon the hiring of any employees.

(iv) Tenant shall require any construction contractor retained by it to perform work on the Premises to carry and maintain, at no expense to Landlord, during such times as contractor is working in the Premises, a non-deductible (a) commercial general liability insurance policy, including, but not limited to, contractor's liability coverage, contractual liability coverage, completed operations coverage, broad form property damage endorsement and contractor's protective liability coverage, to afford protection with limits per person and for each occurrence, of not less than One Million and No/100 Dollars ($1,000,000.00), combined single limit, and with respect to personal injury and death and property damage, Two Million and No/100 Dollars ($2,000,000.00) aggregate (occurrence form) and Two Million and No/100 Dollars ($2,000,000.00) aggregate completed operations; (b) automobile liability insurance in the amount of One Million and No/100 Dollars ($1,000,000.00) combined single limit for bodily injury and property damage; (c) worker's compensation insurance or similar insurance in form and amounts as required by law; and (d) any other insurance reasonably required of Tenant by Landlord or any Mortgagee (as defined in Section 25).

(v) Notwithstanding anything set forth above in this subsection 14.1 to the contrary, all dollar limits specified herein shall be increased from time to time as reasonably necessary to effect economically equivalent insurance coverage, or coverage deemed adequate in light of then existing circumstances.

B.     Policies.

Such policies shall be maintained with companies licensed to do business in the State where the Premises are located and in form reasonably acceptable to Landlord and will be written as primary policy coverage and not contributing with, or in excess of, any coverage which Landlord shall carry. Such policies shall be provided on an occurrence form basis unless otherwise approved by Landlord and shall name Landlord as an additional insured. Such policies shall also contain a waiver of subrogation provision and a provision stating that such policy or policies shall not be canceled, non-renewed, reduced in coverage or materially altered except after thirty (30) day's written notice, said notice to be given in the manner required by this Lease to Landlord. All such policies of insurance shall be effective as of the date Tenant occupies the Premises and shall be maintained in force at all times during the Term of this Lease and all other times during which Tenant shall occupy the Premises.

14.2   Tenant's Failure to Insure. If Tenant shall fail to obtain insurance as required under this Section 14, then after ten (10) days written notice, Landlord may, but shall not be obligated to,

obtain such insurance, and in such event, Tenant shall pay, as Additional Rent, the premium for such insurance upon demand by Landlord, provided that Tenant shall not have obtained such insurance during such ten (10) day period.

14.3    Compliance with Policies. Tenant shall not do or allow to be done, or keep, or allow to be kept, anything in, upon or about the Premises which will contravene Landlord's policies insuring against loss or damage by fire, other casualty, or any other cause, including without limitation, public liability, or which will prevent Landlord from procuring such policies in companies acceptable to Landlord. If any act or failure to act by Tenant in and about the Building and the Premises shall cause the rates with respect to Landlord's insurance policies to be increased beyond those rates that would normally be applicable for such limits of coverage, Tenant shall pay, as Additional Rent, the amount of any such increases upon demand by Landlord.

14.4    Waiver of Right of Recovery. Except as provided in Section 14.3, neither party, including Landlord's managing agent, shall be liable to the other party, including Landlord's managing agent, or to any insurance company (by way of subrogation or otherwise) insuring the other party, for any loss or damage to any building, structure or other tangible property, or loss of income resulting therefrom, or losses under worker's compensation laws and benefits even though such loss or damage might have been occasioned by the negligence of such party, its agents or employees. The provisions of this Section 14.4 shall not limit the indemnification for liability to third parties pursuant to Section 20.

14.5    Landlord's Insurance. Landlord shall carry commercial general liability insurance with regard to the Building and "Special Form" property insurance on the Building, including Landlord Improvements but excluding Tenant's Personal Property. Landlord shall not be obligated to repair any damage to Tenant's Personal Property or replace the same.

14.6    "Insurance Costs" shall mean the premiums for all insurance of any kind that Landlord, in its sole but reasonable discretion, shall deem necessary or advisable to carry with respect to the Building, including, but not limited to, property, rent, wind, boiler and machinery, terrorism, environmental, and commercial general liability insurance; the cost of repairing damage caused by fire, flood or other casualty which damage is excluded from coverage or if covered under any of Landlord's insurance policies, is in excess of such coverage limits; and amounts paid by Landlord through deductibles, if any, under said insurance policies. Landlord shall have the right, but not the obligation, to (i) change, cancel, decrease or increase any insurance coverages with respect to the Building and (ii) obtain umbrella or other policies covering the Building and other assets owned by or associated with Landlord and its affiliates, in which event the cost thereof shall be equitably allocated.

15.    DAMAGE AND DESTRUCTION.

15.1    Landlord's Obligation to Repair and Reconstruct. If, as the result of fire, the elements, accident or other casualty (any of such causes being referred to herein as a "Casualty"), the Premises shall be rendered wholly or partially untenantable (damaged to such an extent as to preclude Tenant's use of the Premises for the purposes originally intended), then, subject to the provisions of subsection 15.2, Landlord shall cause such damage to be repaired, including Landlord Improvements, and the Annual Basic Rent and Additional Rent (but not any Additional Rent due

Landlord either by reason of Tenant's failure to perform any of its obligations hereunder or by reason of Landlord's having provided Tenant with additional services hereunder) shall be abated proportionately as to the portion of the Premises rendered untenantable during the period of such untenantability. All such repairs shall be made at the expense of Landlord, subject to the availability of insurance proceeds and Tenant's responsibilities set forth herein. Landlord shall not be liable for interruption to Tenant's business or for damage to or replacement or repair of Tenant's Personal Property, all of which replacement or repair shall be undertaken and completed by Tenant, at Tenant's sole cost and expense. If the Premises shall be damaged by Casualty, but the Premises shall not be thereby rendered wholly or partially untenantable, Landlord shall promptly cause such damage to be repaired and there shall be no abatement of Rent reserved hereunder.

15.2    Termination of Lease. (A) If the Premises are (1) rendered wholly untenantable, or (2) damaged as a result of any cause which is not covered by Landlord's insurance, or (B) if the Building is damaged to the extent of fifty percent (50%) or more of the gross leasable area thereof, or (C) if, for reasons beyond Landlord's control or by virtue of the terms of any financing of the Building, sufficient insurance proceeds are not available for the reconstruction or restoration of the Building or Premises, then, in any of such events, Landlord may elect to terminate this Lease by giving to Tenant notice of such election within ninety (90) days after the occurrence of such event, or after the insufficiency of such proceeds becomes known to Landlord, whichever is applicable. If such notice is given, the rights and obligations of the parties shall cease as of the date set forth in such notice, and the Annual Basic Rent and Additional Rent (but not any Additional Rent due Landlord either by reason of Tenant's failure to perform any of its obligations hereunder or by reason of Landlord's having provided Tenant with additional services hereunder) shall be adjusted as of the date set forth in such notice, or, if the Premises were rendered untenantable, as of the date of the Casualty.

15.3    Demolition of the Building. If the Building shall be so substantially damaged that it is reasonably necessary, in Landlord's judgment, to demolish the Building for the purpose of reconstruction, Landlord may demolish the same, in which event the Annual Basic Rent and Additional Rent (but not any Additional Rent due Landlord either by reason of Tenant's failure to perform any of its obligations hereunder or by reason of Landlord's having provided Tenant with additional services hereunder) shall be abated to the same extent as if the Premises were rendered wholly untenantable by a Casualty.

15.4    Insurance Proceeds. If the Lease is not terminated pursuant to subsection 15.2, Landlord shall, subject to the terms of any Mortgage (as defined in Section 25), disburse and apply any insurance proceeds received by Landlord to the restoration and rebuilding of the Building in accordance with subsection 15.1 hereof. All insurance proceeds payable with respect to the Premises and the Building shall belong to and shall be payable to Landlord. Notwithstanding anything to the contrary, Tenant shall be entitled to receive all proceeds payable with respect to Tenant's Personal Property.

16.    CONDEMNATION.

16.1    Termination. If either the entire Premises or the Building shall be acquired or condemned by any governmental authority under its power of eminent domain for any public or quasi-public use or purpose, this Lease shall terminate as of the date of vesting or acquisition of title

in the condemning authority and the Rent hereunder shall be abated on that date. If less than the whole but more than fifty percent (50%) of the Rental Area of the Premises or more than fifty percent (50%) of the total area of the Building (even if the Premises are unaffected) or such portion of the Common Area as shall render the Premises or the Building untenantable should be so acquired or condemned, Landlord and Tenant shall each have the option to terminate this Lease by notice given to the other within ninety (90) days of such taking. In the event that such a notice of termination is given, this Lease shall terminate as of the date of vesting or acquisition of title in the condemning authority and the Annual Basic Rent and Additional Rent (but not any Additional Rent due Landlord either by reason of Tenant's failure to perform any of its obligations hereunder, or by reason of Landlord's having provided Tenant with additional services hereunder) shall be adjusted as of such date.

If (a) neither Landlord nor Tenant shall exercise their respective options to terminate this Lease, as hereinabove set forth, or (b) some lesser portion of the Premises or the Building or Common Area, which does not give rise to a right to terminate pursuant to this subsection 16.1, is taken by the condemning authority, this Lease shall continue in force and effect, but from and after the date of the vesting of title in the condemning authority, the Annual Basic Rent payable hereunder during the unexpired portion of the Term or Renewal Term, if applicable, shall be reduced in proportion to the reduction in the total Rental Area of the Premises, and any Additional Rent (but not any Additional Rent due Landlord either by reason of Tenant's failure to perform any of its obligations hereunder, or by reason of Landlord's having provided Tenant with additional services hereunder) payable pursuant to the terms hereof shall be adjusted to reflect the diminution of the Premises and/or the Building, as the case may be.

16.2    Rights to Award. Tenant shall have no claim against Landlord arising out of the taking or condemnation, or arising out of the cancellation of this Lease as a result of any such taking or condemnation, or for any portion of the amount that may be awarded as damages as a result of any taking or condemnation, or for the value of any unexpired portion of the Term or Renewal Term, if applicable, or for any property lost through condemnation, and Tenant hereby assigns to Landlord all its right, title and interest in and to any such award with regard to the Premises; provided, however, that, in the event of a total taking, Tenant may assert any claim it may have against the condemning authority for compensation for Tenant's Personal Property lost thereby, loss of income, and for any relocation expenses compensable by statute and receive such awards therefor as may be allowed in the condemnation proceedings provided that such awards shall be made in addition to, and stated separately from, the award made for the Building, the underlying land and the Premises. Landlord shall have no obligation to contest any taking or condemnation.

17.    BANKRUPTCY.

17.1    Event of Bankruptcy. For purposes of this Lease, each of the following shall be deemed an "Event of Tenant's Bankruptcy":

A.    if Tenant becomes insolvent, as defined in the Bankruptcy Code, or under the Insolvency Laws;

B.    the commencement of any action or proceeding for the dissolution or liquidation of Tenant or for the appointment of a receiver or trustee of the property of Tenant,

whether instituted by or against Tenant, if not bonded or discharged within thirty (30) days of the date of the commencement of such proceeding or action;

C.      if Tenant files a voluntary petition under the Bankruptcy Code or Insolvency Laws;

D.      if there is filed an involuntary petition against Tenant as the subject debtor under the Bankruptcy Code or Insolvency laws, which is not dismissed within sixty (60) days of filing, or results in issuance of an order for relief against the debtor; and

E.      if Tenant makes or consents to an assignment of its assets, in whole or in part, for the benefit of creditors, or to a common law composition of creditors.

As used herein, (i) "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. Section 101 et. seq. as amended or any successor statute and (ii) Insolvency Laws means the insolvency laws of any state or territory of the United States.

17.2    Assumption by Trustee. If Tenant becomes the subject debtor in a case pending under the Bankruptcy Code, Landlord's right to terminate this Lease under Section 18 hereof shall be subject to the applicable rights (if any) of the Trustee in Bankruptcy to assume or assign this Lease as then provided for in the Bankruptcy Code. However, the Trustee in Bankruptcy must give to Landlord and Landlord must receive proper written notice of the Trustee's assumption or rejection of this Lease, within sixty (60) days (or such other applicable period as is provided for in the Bankruptcy Code) after the date of the Trustee's appointment. The failure of the Trustee to give notice of the assumption within the period shall conclusively and irrevocably constitute the Trustee's rejection of this Lease and waiver of any rights of the Trustee to assume or assign this Lease. The Trustee shall not have the right to assume or assign this Lease unless the Trustee (i) promptly and fully cures all defaults under this Lease, (ii) promptly and fully compensates Landlord for all monetary damages incurred as a result of such default, and (iii) provides to Landlord adequate assurance of future performance. In the event Tenant is unable to: (i) cure its defaults, (ii) reimburse Landlord for its monetary damages, or (iii) pay the Rent due under this Lease on time, then Tenant hereby agrees in advance that it has not met its burden to provide adequate assurance of future performance, and this Lease may be terminated by Landlord in accordance with Section 18.

18.     DEFAULT PROVISIONS AND REMEDIES.

18.1    Events of Default. Each of the following shall be deemed an Event of Default by Tenant under this Lease:

A.      failure of Tenant to pay Annual Basic Rent, Additional Rent, or any other sum required to be paid under the terms of this Lease, within five (5) days of the date such sum is due;

B.      failure by Tenant to perform or observe any other term, covenant, agreement or condition of this Lease, on the part of Tenant to be performed within ten (10) days after notice thereof from the Landlord, unless such performance shall reasonably require a longer period, in which case Tenant shall not be deemed in default if Tenant commences the required performance promptly and thereafter pursues and completes such action diligently and expeditiously and in any

event within not more than thirty (30) days or such longer period as is reasonably necessary in which to cure;

    C.    the filing of a tax or mechanic's lien suit or claim against any property of Tenant which is not bonded or discharged and/or dismissed within thirty (30) days of the date such lien is filed;

    D.    abandonment of the Premises by Tenant;

    E.    an Event of Tenant's Bankruptcy;

    F.    the sale of Tenant's interest in the Premises under attachment, execution or similar legal process; and

    G.    the failure of Tenant to vacate the Premises upon the expiration of the Term or the Renewal Term, if applicable, or the earlier termination thereof pursuant to the other provisions hereof.

    18.2    Remedies. Upon the occurrence of an Event of Default, Landlord, without notice to Tenant in any instance (except where expressly provided for below or by applicable law) may do any one or more of the following:

    A.    Sell at public or private sale all or any part of the goods, chattels, fixtures and other Tenant's Personal Property which are or may be put into the Premises during the Term, whether exempt or not from sale under execution or attachment (it being agreed that said property shall at all times be bound within a lien in favor of Landlord and shall be chargeable for all Rent and for the fulfillment of the other covenants and agreements herein contained) and apply the proceeds of such sale, first, to the payment of all costs and expenses of conducting the sale or caring for or storing said property (including all attorneys' fees), second, toward the payment of any indebtedness, including (without limitation) indebtedness for Annual Basic Rent, which may be or may become due from Tenant to Landlord, and third, to pay Tenant, on demand in writing, any surplus remaining after all indebtedness of Tenant to Landlord has been fully paid;

    B.    perform, on behalf and at the expense of Tenant, any obligation of Tenant under this Lease which Tenant has failed to perform and of which Landlord shall have given Tenant notice, the cost of which performance by Landlord, together with interest thereon at the Default Rate from the date of such expenditure, shall be payable by Tenant to Landlord, as Additional Rent, upon demand. Notwithstanding the provisions of this clause (b) and regardless of whether an Event of Default shall have occurred, Landlord may exercise the remedy described in clause (b) without any notice to Tenant if Landlord, in its good faith judgment, believes it would be materially injured by failure to take rapid action or if the unperformed obligation of Tenant constitutes an emergency;

    C.    elect to terminate this Lease and the tenancy created hereby by giving notice of such election to Tenant, and reenter the Premises, by summary proceedings or otherwise, and remove Tenant and all other persons and property from the Premises, and store such property in a public warehouse or elsewhere at the cost of and for the account of Tenant without resort to legal process

and without Landlord being deemed guilty of trespass or becoming liable for any loss or damage occasioned thereby;

        D.    declare any option which Tenant may have to renew the Term or expand the Premises to be null and void and of no further force and effect; or

        E.    exercise any other legal or equitable right or remedy which it may have.

Any costs and expenses incurred by Landlord (including, without limitation, reasonable attorneys' fees) in enforcing any of its rights or remedies under this Lease shall be paid to Landlord by Tenant, as Additional Rent, upon demand.

    18.3    Damages. If this Lease is terminated by Landlord pursuant to Section 18.2.(c), Tenant nevertheless shall remain liable for (a) any Annual Basic Rent, Additional Rent, and damages which may be due or sustained prior to such termination, and (b) all reasonable costs, fees and expenses including, but not limited to, attorneys' fees, costs and expenses incurred by Landlord in pursuit of its remedies hereunder or in renting the Premises to others from time to time. In addition, Landlord may recover from Tenant additional damages to compensate Landlord for loss of rent resulting from termination of the Lease, which shall be an amount equal to the rent which, but for termination of this Lease, would have become due during the remainder of the Term or Renewal Term, if applicable, less the amount of rent, if any, which Landlord shall receive during such period from others to whom the Premises may be rented (other than any Additional Rent received by Landlord as a result of any failure of such other person to perform any of its obligations to Landlord), in which case such damages shall be computed and payable in monthly installments, in advance, on the first day of each calendar month following termination of the Lease and continuing until the date on which the Term or Renewal Term, if applicable, would have expired but for such termination; any suit or action brought to collect any such damages for any month shall not in any manner prejudice the right of Landlord to collect any damages for any subsequent month by a similar proceeding; or

Damages shall be due and payable immediately upon demand by Landlord following any termination of this Lease pursuant to Section 18.2.

If this Lease is terminated pursuant to Section 18.2., Landlord may re-lease the Premises or any part thereof, alone or together with other premises, for such term(s) (which may be greater or less than the period which otherwise would have constituted the balance of the Term) and on such terms and conditions (which may include concessions or free rent and alterations of the Premises) as Landlord, in its sole discretion, may determine. The failure or refusal of Landlord to re-lease the Premises or any part or parts thereof shall not release or affect Tenant's liability for damages.

Nothing contained in this Lease shall limit or prejudice the right of Landlord to prove and obtain in proceedings for the termination of this Lease by reason of bankruptcy or insolvency, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, the damages are to be proved, whether or not the amount be greater, equal to, or less than the amount of the loss or damages referred to above.

18.4 No Waiver. No act or omission by Landlord shall be deemed to be an acceptance of a surrender of the Premises or a termination of Tenant's liabilities hereunder, unless Landlord shall execute a written release of Tenant. Tenant's liability hereunder shall not be terminated by the execution by Landlord of any new lease for all or any portion of the Premises or the acceptance of rent from any assignee or subtenant.

18.5 Remedies Not Exclusive. All rights and remedies of Landlord set forth in this Lease shall be cumulative, and none shall exclude any other right or remedy, now or hereafter allowed by or available under any statute, ordinance, rule of court, or the common law, either at law or in equity, or both. For the purposes of any suit brought or based hereon, this Lease shall be construed to be a divisible contract, to the end that successive actions may be maintained on this Lease as successive periodic sums shall mature hereunder. The failure of Landlord to insist, in any one or more instances, upon a strict performance of any of the covenants, terms and conditions of this Lease or to exercise any right or option herein contained shall not be construed as a waiver or a relinquishment for the future, of such covenant, term, condition, right or option, but the same shall continue and remain in full force and effect unless the contrary is expressed by Landlord in writing. The receipt by Landlord of rents hereunder, with knowledge of the breach of any covenant hereof or the receipt by Landlord of less than the full rent due hereunder, shall not be deemed a waiver of such breach or of Landlord's right to receive the full rents hereunder, and no waiver by Landlord of any provision hereof shall be deemed to have been made unless expressed in writing and signed by Landlord.

19. LANDLORD'S LIEN.

19.1 Tenant hereby grants to Landlord a lien and security interest on all property of Tenant now or hereafter placed in or upon the Premises, and such property shall be and remain subject to such lien and security interest of Landlord for payment of all Rent and other sums agreed to be paid by Tenant herein. It is provided, however, the Landlord shall not have a lien which would be superior to a lien from a lending institution, supplier or leasing company, if such lending institution, supplier or leasing company has a security interest in the equipment, furniture or other tangible personal property and which security interest has its origin in a transaction whereby Tenant originally acquired such equipment, furniture or other tangible personal property. Landlord agrees to enter into an agreement in form reasonably acceptable to Landlord wherein Landlord shall subordinate its lien on Tenant's Personal Property to any purchase money lender or to Tenant's primary business lender, whether for purchase money, general business financing or otherwise.

19.2 The provisions of this paragraph relating to such lien and security interest shall constitute a security agreement under and subject to the Uniform Commercial Code of the state where the Premises are located so that Landlord shall have and may enforce a security interest on all property of Tenant now or hereafter placed in or on the Premises, in addition to and cumulative of the Landlord's liens and rights provided by law or by the other terms and provisions of this Lease.

20. INDEMNITY.

To the maximum extent permitted by law, each party shall indemnify, hold harmless and (at Landlord's option) defend the other party and such party's agents, servants and employees from and against all claims, actions, losses, costs and expenses (including attorneys' and other professional fees), judgments, settlement payments, and, whether or not reduced to final judgment, all liabilities,

damages, or fines paid, incurred or suffered by any third parties to the extent arising directly or indirectly from any acts or omissions of the indemnifying party or any contractor, agent, employee, invitee or licensee of such indemnifying party in or about the Building. The foregoing indemnity is in addition to, and not in substitution for, any indemnities given by Tenant under Section 6.3.

21.   LIMITATION ON LANDLORD LIABILITY.

The term "Landlord" as used in this Lease shall mean only the owner or the Mortgagee or its trustees, as the case may be, then in possession of the Building so that in the event of any transfer by Landlord of its interest in the Building, the Landlord in possession immediately prior to such transfer shall be, and hereby is, entirely released and discharged from all covenants, obligations and liabilities of Landlord under this Lease accruing after such transfer. In consideration of the benefits accruing hereunder, Tenant, for itself, its successors and assigns, covenants and agrees that, in the event of any actual or alleged failure, breach or default hereunder by the Landlord, and notwithstanding anything to the contrary contained elsewhere in this Lease, the remedies of Tenant under this Lease shall be solely and exclusively limited to Landlord's interest in the Building.

22.   LANDLORD OBLIGATIONS.

Landlord agrees to perform all of its obligations under this Lease in a first class manner consistent with the standards applicable to similar buildings in the vicinity of the Building. Landlord shall be excused for the period of any delay in the performance of any of its obligations when the delay is due to any cause or causes beyond Landlord's control which include, without limitation, acts of God, all labor disputes, governmental regulations or controls, civil unrest, war, adverse weather condition, fire or other casualty, inability to obtain any material, services, or financing unless otherwise provided for in this Lease. Except where specifically set forth in this Lease, there shall be no abatement, set-off or deduction of Annual Basic Rent or Additional Rent due under this Lease.

23.   ASSIGNMENT AND SUBLETTING.

23.1   Prohibited Without Landlord's Consent. Tenant agrees for itself and its permitted successors and assigns in interest hereunder that it will not (a) assign or otherwise transfer, mortgage or otherwise encumber this Lease or any of its rights hereunder; (b) sublet the Premises or any part thereof or permit the occupancy or use of the Premises or any part thereof by any person other than Tenant; and/or (c) permit the assignment or other transfer of this Lease or any of Tenant's rights hereunder by operation of law (each of the events referred to in the foregoing clauses (a), (b) and (c) being hereinafter referred to as a "Transfer"), without the prior written consent of Landlord in each instance first obtained, which consent shall not be unreasonably withheld, conditioned or delayed. Landlord shall provide to Tenant notice of its consent or rejection of such sublet or assignment within ten (10) business days following the receipt of Tenant's notice as herein provided. Once given, such consent shall not constitute a consent to any subsequent Transfer. Any attempted Transfer without Landlord's consent shall be null and void and shall not confer any rights upon any purported transferee, assignee, mortgagee, sublessee, or occupant. No Transfer, regardless of whether Landlord's consent has been granted or withheld, shall be deemed to release Tenant (or Guarantor) from any of its obligations hereunder. Tenant hereby indemnifies Landlord against liability resulting from any claim made against Landlord by any assignee or subtenant or by any broker claiming a commission in connection with the proposed Transfer. In the event Landlord shall

consent to a Transfer of this Lease, any option which Tenant may have to renew the Term shall be null and void.

### 24.    HOLDING OVER.

Tenant agrees to vacate the Premises at Termination Date, and Landlord shall be entitled to the benefit of all summary proceedings to recover possession of the Premises at the end of the Term or Renewal Term, if applicable. If Tenant remains in possession of the Premises after the Termination Date, such action shall not renew this Lease by operation of law and nothing herein shall be deemed a consent by Landlord to Tenant's remaining in the Premises. If Tenant fails to vacate the Premises as required, Landlord may consider Tenant as either (a) a "Tenant-at-Will" (i.e. month-to-month tenant) liable for the payment of rent at the then market rate as determined by Landlord or (b) as a "Tenant-Holding Over" liable for an amount equal to the actual damages incurred by Landlord as a result of Tenant's holding over, including, without limitation, all incidental, prospective and consequential damages and attorney's fees, but in no event shall such amount be less than an amount equal to one hundred twenty-five percent (125%) the Annual Basic Rent, and Additional Rent, reserved hereunder applicable to the period of the holdover. In either event, all other covenants of this Lease shall remain in full force and effect.

### 25.    SUBORDINATION AND ATTORNMENT.

This Lease is subject and subordinate to the liens of all mortgages, deeds of trust and other security instruments now or hereafter placed upon the Building or any portion thereof and all ground and other underlying leases from which Landlord's interest is derived (said mortgages, deeds of trust, other security instruments, and ground leases being hereinafter referred to as "Mortgages" and the mortgagees, beneficiaries, secured parties, and ground lessors thereunder from time to time being hereinafter called "Mortgagees"), and to any and all renewals, extensions, modifications, or refinancings thereof, provided that Landlord deliver to Tenant a subordination and non-disturbance agreement in form reasonably acceptable to Tenant. Tenant agrees that, if any proceedings are brought for the foreclosure of any of the Mortgages, Tenant, if requested to do so by the purchaser at the foreclosure sale, shall attorn to the purchaser, recognize the purchaser as the landlord under this Lease, and make all payments required hereunder to such new landlord without any deduction or set-off of any kind whatsoever. Tenant waives the provisions of any law or regulation, now or hereafter in effect, which may give, or purport to give, Tenant any right to terminate this Lease or to alter the obligations of Tenant hereunder in the event that any such foreclosure or termination or other proceeding is prosecuted or completed.

Notwithstanding anything contained herein to the contrary, any Mortgagee may at any time subordinate the lien of its Mortgages to the operation and effect of this Lease without obtaining the Tenant's consent thereto, by giving the Tenant written notice thereof, in which event this Lease shall be deemed to be senior to such Mortgages without regard to the respective dates of execution and/or recordation of such Mortgages and this Lease and thereafter such Mortgagee shall have the same rights as to this Lease as it would have had were this Lease executed and delivered before the execution of such Mortgages.

### 26.    ESTOPPEL CERTIFICATES.

Tenant shall, without charge, at any time and from time-to-time, within fifteen (15) days after receipt of request therefor by Landlord, execute, acknowledge and deliver to Landlord a written estoppel certificate certifying to Landlord, Landlord's Mortgagee, any purchaser of Landlord's interest in the Building, or any other person designated by Landlord, as of the date of such estoppel certificate, the following, without limitation: (a) whether Tenant is in possession of the Premises; (b) whether this Lease is in full force and effect; (c) whether there have been any amendments to this Lease, and if so, specifying such amendments; (d) whether there are then existing any set-offs or defenses against the enforcement of any rights hereunder, and if so, specifying such matters in detail; (e) the dates, if any, to which any rent or other charges have been paid in advance and the amount of any Security Deposit held by Landlord; (f) that Tenant has no knowledge of any then existing defaults of Landlord under this Lease, or if there are such defaults, specifying them in detail; (g) that Tenant has no knowledge of any event having occurred that authorizes the termination of this Lease by Tenant, or if such event has occurred, specifying it in detail; and (h) the address to which notices to Tenant under this Lease should be sent. Any such certificate may be relied upon by the person or entity to whom it is directed or by any other person or entity who could reasonably be expected to rely on it in the normal course of business.

## 27.   PEACEFUL AND QUIET POSSESSION.

Tenant, if and so long as it pays all rents due hereunder and performs and observes the other terms and covenants to be performed and kept by it as provided in this Lease, shall have the peaceable and quiet possession of the Premises during the Term or Renewal Term, if applicable, free of any claims of Landlord or anyone lawfully claiming by, through or under Landlord, subject, however, to the terms of this Lease and to matters of public record existing as of the date of this Lease.

## 28.   LANDLORD'S ACCESS TO PREMISES.

Landlord and its agents may at any reasonable time and without incurring any liability to Tenant, other than liability arising under Section 20, upon prior notice to Tenant, enter the Premises to inspect them or to make alterations or repairs or for any purpose which Landlord considers necessary for the repair, operation, or maintenance of the Building; provided, however, that in the case of an emergency, Landlord may enter the Premises at any time. Tenant shall allow the Premises to be exhibited by Landlord (a) at any time to any representative of a lender or to any prospective purchaser of the Building or Landlord's interest therein or (b) within three (3) months of the end of the Term, if the Renewal Term has not been exercised by Tenant, or within three (3) months of the end of the Renewal Term to any persons who may be interested in leasing the Premises.

For purposes of this Section of the Lease, "protected health information" ("PHI") shall have the meaning defined by the Standards for Privacy of Individually Identifiable Health Information, 45 C.F.R. Part 160 and Subparts A and E of Part 164 and all amendments thereto (commonly known as the "Privacy Standards"), as promulgated by the U.S. Department of Health and Human Services pursuant to the Administrative Simplification provisions of the Health Insurance Portability and Accountability Act of 1996 and all amendments thereto ("HIPAA"). In the event that in its use of the Premises for the Permitted Use, Tenant creates, stores or maintains PHI in the Leased Premises, the parties agree that neither Landlord nor Landlord's employees and agents shall need access to, or the use of, any PHI of Tenant. However, in the event PHI is seen by or disclosed (whether

inadvertently or otherwise) to Landlord or its employees or agents, the party discovering such disclosure shall promptly notify the other party and Landlord agrees to promptly take commercially reasonable measures to prevent any subsequent dissemination by Landlord or Landlord's employees or agents of such PHI to third parties. The parties agree that the provisions of this Section do not create, and are not intended to create, a "business associate" relationship between the parties as that term is defined by the Privacy Standards.

29.    RECORDATION.

Neither Landlord nor Tenant shall record this Lease, any amendment to this Lease or any other memorandum of this Lease without the prior written consent of the other party, which consent may be withheld in the sole discretion of either party and, in the event such consent is given, the party requesting such consent and recording shall pay all transfer taxes, recording fees and other charges in connection with such recording. Notwithstanding the above, Tenant covenants that if at any time any mortgagee or ground lessor relating to the financing of the Building shall require the recordation of this Lease, or if the recordation of this Lease shall be required by any valid governmental order, or if any governmental authority having jurisdiction in the matter shall assess and be entitled to collect transfer taxes, documentary stamp taxes, or both, on this Lease, Tenant, upon the request of Landlord, shall execute such instruments, including a memorandum of this Lease, as may be necessary to record this Lease, and shall pay all recording fees, transfer taxes and documentary stamp taxes, payable on, or in connection with, this Lease or such recordation.

30.    MISCELLANEOUS.

30.1    Separability. If any term or provision of this Lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Lease or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Lease shall be valid and enforceable to the fullest extent permitted by law.

30.2    Applicable Law. This Lease shall be given effect and construed by application of the laws of the state where the Building is located, and any action or proceeding arising hereunder shall be brought in the courts of the State where the Premises are located.

30.3    No Discrimination. It is Landlord's policy to comply with all applicable state and federal laws prohibiting discrimination in employment based on race, age, color, sex, national origin, disability, religion, or other protected classification. It is further intended that the Building shall be operated so that all perspective tenants thereof, and all customers, employees, licensees and invitees of all tenants shall have equal opportunity to obtain all the goods, services, accommodations, advantages, facilities and privileges of the Building without discrimination because of race, age, color, sex, national origin, disability, or religion. To that end, Tenant shall not discriminate in the conduct and operation of its business in the Premises against any person or group of persons because of the race, age, color, sex, religion, national origin or other protected classification of such person or group of persons.

30.4    Integration of Agreements. This writing is intended by the parties as a final expression of their agreement and is a complete and exclusive statement of its terms, and all

negotiations, considerations and representations between the parties hereto are incorporated herein. No course of prior dealings between the parties or their agents shall be relevant or admissible to supplement, explain, or vary any of the terms of this Lease. Acceptance of, or acquiescence to, a course of performance rendered under this Lease or any prior agreement between the parties or their agents shall not be relevant or admissible to determine the meaning of any of the terms or covenants of this Lease. Other than as specifically set forth in this Lease, no representations, understandings or agreements have been made or relied upon in the making of this Lease. This Lease can only be modified by a writing signed by each of the parties hereto.

30.5    Third Party Beneficiary. Except as expressly provided elsewhere in this Lease, nothing contained in this Lease shall be construed so as to confer upon any other party the rights of a third party beneficiary.

30.6    Captions; Gender. The captions used in this Lease are for convenience only and do not in any way limit or amplify the terms and provisions hereof. As used in this Lease and where the context so requires, the singular shall be deemed to include the plural and the masculine shall be deemed to include the feminine and neuter, and vice versa.

30.7    Successors and Assigns. Subject to the express provisions of this Lease to the contrary, the terms, provisions and covenants contained in this Lease shall apply to, inure to the benefit of, and be binding upon the parties hereto and their respective heirs, personal representatives, successors and assigns.

30.8    Waiver of Jury Trial. Landlord and Tenant hereby expressly waive trial by jury in any action or proceeding or counterclaim brought by either party hereto against the other party on any and every matter, directly or indirectly arising out of or with respect to this Lease, including, without limitation, the relationship of Landlord and Tenant, the use and occupancy by Tenant of the Premises, any statutory remedy and/or claim of injury or damage regarding this Lease.

30.9    Notices. All notices, demands and requests required under this Lease shall be in writing. All such notices, demands and requests shall be deemed to have been properly given if sent by United States certified mail, return receipt requested, postage prepaid, or hand delivered, or overnight delivery, addressed to Landlord or Tenant, at the Landlord Notice Address and Tenant Notice Address, respectively. Either party may designate a change of address by written notice to the other party, in the manner set forth above. Notice, demand and requests which shall be served by certified mail in the manner aforesaid, shall be deemed to have been given three (3) days after mailing. Notices sent by overnight delivery shall be deemed to have been given the day after sending. Without intending to limit the generality of the foregoing requirement that all notices, demands and requests be in writing, there are certain provisions in this Lease where, for emphasis alone, such requirement is reiterated.

30.10    Effective Date of this Lease. Unless otherwise expressly provided, all terms, conditions and covenants by Tenant contained in this Lease shall be effective as of the date first above written.

30.11    Mechanics' Liens. In the event that any mechanics' or materialmen's lien, suit or claim shall at any time be filed against the Premises purporting to be for work, labor, services or

materials performed or furnished to Tenant or anyone holding the Premises through or under Tenant, Tenant shall cause the same to be dismissed and/or discharged of record or bonded within thirty (30) days after the filing thereof. If Tenant shall fail to cause such lien to be discharged and/or dismissed or bonded within thirty (30) days after the filing thereof, then, in addition to any other right or remedy of Landlord, Landlord may, but shall not be obligated to, discharge the same by paying the amount claimed to be due; and the amount so paid by Landlord, and all costs and expenses, including reasonable attorneys' fees incurred by Landlord in procuring the discharge of such lien, shall be due and payable by Tenant to Landlord, as Additional Rent, on the first day of the next succeeding month. Notice is hereby given that Landlord shall not be liable for any labor or materials furnished to Tenant upon credit and that no mechanics', materialmen's or other liens for any such labor or materials shall attach to or affect the estate or interest of Landlord in and to the land and improvements of which the Premises are a part.

30.12  Waiver of Right of Redemption. Tenant hereby expressly waives (to the extent legally permissible) for itself and all persons claiming by, through or under it, any right of redemption or right to restore the operation of this Lease under any present or future law in the event Tenant is dispossessed for any proper cause, or in the event Landlord shall obtain possession of the Premises pursuant to the terms of this Lease. Tenant understands that the Premises are leased exclusively for business, commercial and mercantile purposes and therefore shall not be redeemable under any provision of law.

30.13  Mortgagee's Performance. If requested by any Mortgagee, Tenant shall give such Mortgagee written notice of any default by Landlord under this Lease and a reasonable opportunity to cure such default. Tenant shall accept performance of any of Landlord's obligations hereunder by any ground lessor or mortgagee relating to the financing of the Building.

30.14  Mortgagee's Liability. No mortgagee or ground lessor relating to the financing of the Building, not in possession of the Premises or the Building, shall have any liability whatsoever hereunder.

30.15  Exhibits. Each writing or plat referred to herein as being attached hereto as an exhibit is hereby made a part hereof, with the same full force and effect as if such writing or plat were set forth in the body of this Lease.

30.16  Time of Essence. Time shall be of the essence of this Lease with respect to the performance by Tenant of its obligations hereunder.

30.17  Amendment. This Lease may be amended by and only by an instrument executed and delivered by each party hereto. No amendments of this Lease entered into by Landlord and Tenant, as aforesaid, shall impair or otherwise affect the obligations of Tenant hereunder, except as amended, all of which obligations shall remain in full force and effect and pertain equally to any such amendments, with the same full force and effect as if the substance of such amendments was set forth in the body of this Lease.

30.18  Signage. Tenant shall have the option to install and maintain signage on the available space on the pylon sign, a placard sign in the first (1st) floor lobby directory within the Common Area and signage on the front door of the Premises at Tenant's sole cost and expense. Colors and

formatting of such signage shall be determined in Landlord's sole discretion and shall be reasonably consistent, subject to material availability, with such signage of other tenants within the Building.

30.19  Counterparts.  This Lease may be executed in multiple counterparts, each of which it shall be deemed an original, but all of which shall constitute one and the same instrument. Signatures to this Lease which are transmitted by facsimile or other electronic form of transmission shall have the same binding effect as original signatures.

30.20  Broker's Commission.  Each party represents and warrants that other than the listing broker, RRES, who shall be paid by Landlord in accordance with a separate agreement which shall include a co-op fee to Colliers International equal to three percent (3%) of the aggregate value of the Lease, it has caused or incurred no claims for brokerage commissions or finder's fees in connection with the execution of this Lease, and each party shall indemnify, protect, defend and hold the other harmless against and from all liabilities arising from any such claims caused or incurred by it (including without limitation, the cost of attorneys' fees in connection therewith).

31.  GUARANTY.

As a material inducement to Landlord entering into this Lease, Tenant shall deliver to Landlord the fully-executed Guaranty, in the form attached hereto as Exhibit C, on the Effective Date of this Lease.

32.  MEDICAL WASTE.

Notwithstanding anything to the contrary herein, the parties agree, to the extent any trash removal is included in the janitorial services furnished by Landlord pursuant to Section 9, the removal, disposal, or destruction of Medical Waste (as defined herein below) shall be exclusively the responsibility of Tenant under all circumstances, and shall not become the obligation of Landlord for any reason. All such disposals of Medical Waste shall comply with all applicable laws and regulations and shall be accomplished at times, in a manner and in a path approved in writing and in advance by Landlord. As used in this Section, "Trash" means paper, refuse, and other used or abandoned items commonly thought of as trash EXCEPT THAT, under no circumstances does Trash relate to or refer to any of the following (collectively, the "Medical Waste"):

A.  medical devices or paraphernalia such as syringes, sutures, cotton swabs or pads, sponges, bandages, or wraps of any sort, or any other item which is utilized to treat any patient or other person for any medicinal, medical, diagnostic or therapeutic reason or purpose;

B.  any material of any type or nature whatsoever that is radioactive to any degree, whether as the result of their manufacture, use or application;

C.  any device or thing which is intended to come into contact with any part of the body, whether or not such item or device is so utilized prior to its disposal;

D.  any instrument or thing which is designed for use or application in the office of Tenant, whether or not such device, instrument or thing is intended for any medical, diagnostic, or therapeutic use; or

E.  any device, instrument or thing which has become infected, contaminated, diseased, or otherwise exposed to harmful, contagious, or communicable organisms, bacteria, or other life form.

Tenant agrees that Medical Waste will be disposed of separately from the Trash. Tenant also agrees that Tenant will not mix or place Medical Waste in regular trash containers, and shall use receptacles identified as being only for medical waste and colored red.

The parties further agree that, in the event any harm or injury, of any type or nature whatsoever, should be caused to, incurred by, inflicted upon, or suffered by any individual, including Tenant or Tenant's agents, employees, patients, visitors, invitees or licensees, or Landlord or any other tenant within the Building, or any of their respective agents, employees, guests, visitors, invitees or licensees, as the result of the failure of Tenant to timely, thoroughly and completely dispose of Tenant's Medical Waste, or as the result of coming into contact, whether by touching, breathing, inhaling, or in any other manner ingesting or consuming such item, or by being exposed in any manner thereto, due to Tenant's negligence, Tenant shall save and hold Landlord and other tenants, and their respective agents, employees, patients, visitors, invitees or licensees harmless against any damages, liability, claims, causes of action or judgments arising therefrom. Tenant shall pay any injured party for all damages, costs or expenses, including attorney fees, arising out of any exposure, harm, injury, disease, contamination, or affliction suffered as the result of any Medical Waste stored, generated, or disposed of by Tenant or in the Premises.

The parties agree that it is the purpose of this Section 32 to impose upon Tenant the full responsibility to timely, thoroughly and properly remove or dispose of all Medical Waste related to Tenant's use of the Premises, and Tenant shall not permit the exposure of anyone to any Medical Waste.

[Signatures on Following Page]

IN WITNESS WHEREOF, the parties hereto have executed this Lease as of the day and year first above written.

WITNESS/ATTEST:

**LANDLORD**

**QUARTERFIELD 100, LP**

By: _____ (SEAL)
Name: Joseph G. Baldwin
Title: Manager

WITNESS/ATTEST:

**TENANT**

**MID-ATLANTIC RHEUMATOLOGY**

By: _____ (SEAL)
Name: Dr. Erinn Maury
Title: Sole Proprietor

Exhibit A

Site Plan

EXHIBIT A



Exhibit B

Landlord's Work

Exhibit B

## Scope of Work

Quarterfield

| Item # | Product Description | Qty | Unit | | Architectural Reference |
|---|---|---|---|---|---|
| 1 | **Cabinets and Countertops** <br> 1 PL-01 1-pcs countertop 124" long with 1 field seam, 2 grommets, 1 metal bracket and 4" backsplashes.  2 PL-01 18" 3-drawer base cabinets. | 1 | Each | Loc <br> Plan <br> Elev <br> Section | Hall |
| 2 | **Cabinets and Countertops** <br> 1 PL-01 1-pcs countertop 77" long with 2 grommets, 1 metal bracket and 4" backsplashes 3 PL-01 25" wall cabinets with 2 shelves . | 1 | Each | Loc <br> Plan <br> Elev <br> Section | Copy Area |
| 3 | **Cabinets and Countertops** <br> 1 PL-01 1-pcs countertop 81" long with  2 grommets, 1 metal bracket and 4" backsplashes. 3 PL-01 28" wall cabinets with 2 shelves . | 1 | Each | Loc <br> Plan <br> Elev <br> Section | Work Area |
| 4 | **Cabinets and Countertops** <br> 1 PL-01 1-pcs countertop 95" long with 1 sink cutout and 4" backsplashes. 4 PL-01 wall cabinets 36" & 30" wide with 2 shelves.  2 PL-01 base cabinets 36" wide with 1 shelf. 1 PL-01 3-drawer base cabinet 18" wide. 1 PL-01 ADA sink base cabinet 36" wide. | 1 | Each | Loc <br> Plan <br> Elev <br> Section | Break Room |
| 5 | **Cabinets and Countertops** <br> 3 PL-01 1-pcs countertops 39" long with 1 sink cutout and 4" backsplashes. 3 PL-01 1-pcs countertops 36" long with 4" backsplashes. 3 PL-01 36" wall cabinets with 2 shelves.  3 PL-01 36" sink base cabinets.  3 PL-01 countertop support panels. | 1 | Each | Loc <br> Plan <br> Elev <br> Section | 3 Exam Rooms |
| 6 | **Cabinets and Countertops** <br> 1 PL-01 3-pcs angled countertop 30" deep with 2 field seams, 2 grommets, 3 metal brackets and  finished on 2 sides. 1 PL-01 1-pcs countertop with 1 grommet,  1 metal bracket, finished on 2 sides.  The knee wall requires 2" laminated blocking which is included in the price to get the work surfaces to 30" high. | 1 | Each | Loc <br> Plan <br> Elev <br> Section | Reception Countertops |

Quotation No.:24766                Specified Woodworking Corporation

Page 1 of 1
5/7/2015 2:49 PM