**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| IN RE: | |
| **MID-ATLANTIC RHEUMATOLOGY, LLC** | **Case No. 24-10845** |
| | **Chapter 11, Subchapter V** |
| **Debtor** | |

**DEBTOR'S MOTION FOR AN ORDER AUTHORIZING USE OF EXISTING CASH MANAGEMENT SYSTEM**

Mid-Atlantic Rheumatology, LLC, the "Debtor and Debtor-in-Possession (collectively the "Debtor"), by and through undersigned counsel, Daniel A. Staeven, respectfully requests this Court for an Order Authorizing Use of Existing Cash Management System, Bank Accounts, and Business Forms by granting Interim waiver of the requirements contained in Section 345(b) of the Bankruptcy Code. In support of the Motion, the Debtor states as follows:

**Jurisdiction and Venue**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C §§ 157 and 1334.

2.      Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, and this is a core proceeding pursuant to 28 U.S.C §175(b)(2)(A).

3.      The basis for relief sought herein are sections 105(a), 345, 363, 364 and 503 of title 11, Subchapter V of the United States Bankruptcy Code (the "Bankruptcy Code") and Bankruptcy Rules 6003 and 6004 (the "Bankruptcy Rules").

**Background**

4.      On January 31, 2025, the Debtor filed a Voluntary Petition (the "Petition Date") for Relief under Chapter 11, Subchapter V of the Bankruptcy Code. The Debtor continues to own and manage its business and to conduct affairs as a Debtor-In-Possession.

1

5.    The Debtor has continued in the possession of its property and has continued to operate and manage its business as Debtor-in-Possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

## The Debtor's Cash Management System

6.    The Debtor currently operates a medical practice in the State of Maryland. The Debtor manages its finances through the maintenance of a centralized electronic payment processing into its cash management system. Specifically, the Debtor maintains an account at M & T Bank and an account at Sandy Spring Bank for handling electronic payments from payors including insurance companies. **<u>Exhibit A</u>** identifies and describes each account, within the Cash Management System. The bank accounts are essential to the Debtor's ongoing business operations, and the interruption of the Cash Management System would be detrimental for reasons set forth herein.

### A. Bank Account

a. *Operating Account (9513)* – (the "M&T Account"). This is the Debtor's primary account, in which most incoming and outgoing payments, credit and debit card payments are made.

b. *Operating Account (5401)* – (the "Sandy Spring Account"). This is the Debtor's secondary account, meant as a backup to hold incoming funds from various other insurance companies and payees.

7.    The Debtor's M&T Account and Sandy Spring Account (collectively, "Cash Management System") allow the Debtor to ensure cash availability and reduces administrative costs through method of coordinating the collection and movement of funds. Granting the Debtor authority to continue using the Cash Management System will help facilitate a smooth transition

into this Chapter 11, Subchapter V case. The Debtor seeks authority to maintain and leave open the existing M&T Account and Sandy Spring Account (collectively the "Bank Accounts"). The Debtor has instructed or is in the process of instructing the Bank Accounts to place a hold on and not to pay any checks or other withdrawals drawn and outstanding on the Bank Accounts issued prior to the Petition Date until this Court enters an Order authorizing the payment of these checks and withdrawals. The Debtor will not pay, and each of the banks where the Bank Accounts are maintained will be instructed not to pay, any prepetition debts other than those specifically authorized by this Court.

### B.  Business Forms and Deposit Practices

8.      In the ordinary course of business, the Debtor uses the Cash Management System to process the transactions in their Bank Accounts. While a Debtor in this bankruptcy case they will use a Debtor in Possession account but to minimize expenses to their estate and avoid confusion to its employees, customers, and suppliers, the Debtor respectfully requests that the Court authorize the Debtor to continue to use all correspondence and business forms (including, without limitation, letterhead, purchase orders, and invoices), as such forms were in existence immediately before the Petition Date, without reference to the Debtor's status as a debtor-in-possession. With such authorization, the Debtor can avoid the expense, delay, and confusion of ordering entirely new business forms.

### Relief Requested

9.      The Debtor requests authority from the Court to maintain its prepetition Cash Management System by continuing to operate its existing Bank Accounts, using its existing Business Forms, and paying, on an ongoing basis, any related bank fees as they come due. The

3

Debtor respectfully requests this authority on an interim basis and requests a hearing within approximately 21 days to consider this Motion on a final basis.

### Basis for Relief

#### A.  Authorize Use of Existing Cash Management System

10.     Allowing the Debtor to use its Cash Management System is entirely consistent with applicable provisions of the Bankruptcy Code. Section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a debtor in possession with the flexibility to engage in ordinary course transactions required to operate its business, without unneeded oversight by the debtor's creditors or having to obtain court approval. See, e.g., *In re Lavigne,* 114 F.3d 379, 384 (2d Cir. 1997); *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992).

11.     The Debtor's ability to continue using the Cash Management System and engage in related "routine transactions" falls within the parameters of section 363(c) of the Bankruptcy Code. See, e.g., *Charter Co. v. Prudential Ins. Co. of Am.* (In re Charter Co.), 778 F.2d 617, 621 (11th Cir. 1985) (holding that a debtor's request for authority to continue using its existing cash management system is consistent with section 363(c)(1) of the Bankruptcy Code); *see also In re Amdura Corp.*, 75 F.3d 1447, 1453 (10th Cir. 1996).

12.     To the extent that use of the existing Cash Management System is beyond the ordinary course of the Debtor's business, such use is permitted by sections 363(b)(1) and 105(a) of the Bankruptcy Code. Section 363(b)(1) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) further provides that the Court may "issue

any order . . . that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

13. Bankruptcy courts routinely permit debtors to maintain their existing cash management systems, generally treating requests for such relief as a relatively "simple matter." *In re Columbia Gas Sys.,* 997 F.2d 1039, 1061 (3d Cir. 1993) (recognizing that a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient"); *In re Charter Co.,* 778 F.2d at 621 (holding that allowing the debtor to use its prepetition "routine cash management system" was entirely consistent with applicable provisions of the Bankruptcy Code).

14. The Cash Management System and applicable procedures employed by the Debtor constitute ordinary, usual, and essential business practices similar to those used by other corporations. The Cash Management System affords the Debtor significant benefits, including the ability to (a) continue to process payments centrally, (b) ensure the availability of funds when necessary, and (c) minimize administrative expenses by facilitating a more efficient movement of funds and monitoring of balance and presentment information. The Cash Management System is critical to the Debtor's ability to continue its business operations effectively. It would be unduly onerous and expensive for the Debtor to establish a new cash management system. For example, altering the Cash Management System could disrupt payments to employees and key vendors and impose a serious administrative burden on the Debtor. The Debtor therefore requests permission to use its existing Cash Management System on an interim basis until a final hearing to consider the Motion and, ultimately, on a final basis.

**B. Authorize Continued Use of Bank Accounts**

15.     The Office of the United States Trustee for the District of Maryland has established the U.S. Trustee Guidelines (the "UST Guidelines") for debtors-in-possession who operate their business. The UST Guidelines require that the debtor-in-possession, among other things, close all existing bank accounts and open new bank accounts bearing the designation "Debtor-in-Possession" (the "DIP Account Requirements").

16.     The U.S. Trustee Guidelines, among other restrictions and requirements, prohibit disbursements other than by numbered checks, which must include the debtor's case name and case number, a "debtor in possession" designation, and an indication of the account type. Rigid adherence to the U.S. Trustee Guidelines would require, among other things, the closure of prepetition bank accounts, the opening of new accounts, and the immediate printing of new checks with a "Debtor in Possession" designation on them. Enforcement of the U.S. Trustee Guidelines in this case would disrupt the Debtor's business operations, impose burdensome expenses on the estate, and unnecessarily distract the Debtor from its reorganization efforts. *See In re Gaylord Container Corp.,* No. 92-3654, 1993 WL 188671, at *3, 13 (E.D. La. May 24, 1993) (finding that the banking requirements of the U.S. Trustee were "a substantial burden on any debtor and . . . resulted in the incurrence of extraordinary unquantifiable costs to the debtor . . .").

17.     Allowing the existing Cash Management System to remain in place will facilitate a smoother transition into Chapter 11 by, among other things, avoiding administrative inefficiencies (including the reissuing of certain outstanding checks, which would be overly cumbersome), expenses, and distraction associated with disrupting the Cash Management System, minimizing delays in the payment of post-petition obligations, and will aid the Debtor.

18.    The commencement of this case may already strain Debtor's relationship with its customers and vendors, all of which are vital to the Debtor's operations and successful reorganization.

19.    Relief requested in this Motion is critical to the Debtor's successful reorganization. Maintenance of the existing Bank Account and Cash Management System is in the best interest of all creditors, other parties of interest, and the Debtor's estate.

## Reservation of Rights

20.    Nothing contained in this Motion is or should be construed as: (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; or (e) otherwise affect the Debtor's rights under section 365 of the Bankruptcy Code to assume or reject any executory contract with any party subject to this Motion.

## Notice

21.    Notice of this Motion shall be given to (a) the U.S. Trustee; (b) the Subchapter V Trustee, (c) the Debtor's 20 largest unsecured creditors on a consolidated basis; (d) the Debtor's Banks; (e) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service; and (f) any party required to be served under Bankruptcy Local Rules. Due to the nature of the relief requested herein, the Debtor submits that no other or further notice need be provided.

WHEREFORE, the Debtor respectfully requests that this Court enter and interim and final order, granting the relief requested in the Motion and such other and further relief as may be just and proper.

7

Date:   February 10, 2025                    Respectfully Submitted,


*/s/ Daniel A. Staeven, Esq.*
Daniel A. Staeven, Esq.
(Bar No. 27662)
FROST LAW
839 Bestgate Road, Suite 400
Annapolis, MD 21401
410-497-5947
Daniel.Staeven@frosttaxlaw.com

*Attorney for Debtor*
*Mid-Atlantic Rheumatology, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this February 10, 2025 a copy of the Motion For An Order Authorizing Use Of Existing Cash Management System was sent to the following parties via CM/ECF and to the parties on the attached court mailing matrix:

**25-10845 Notice will be electronically mailed to:**

Monique Desiree Almy malmy@crowell.com,
cbest@crowell.com,
malmy@ecf.axosfs.com,
monique-almy-7127@ecf.pacerpro.com

Katherine A. (UST) Levin Katherine.A.Levin@usdoj.gov,
amy.busch@usdoj.gov

Daniel Alan Staeven daniel.staeven@frosttaxlaw.com,
daniel.staeven@frosttaxlaw.com,
21029@notices.nextchapterbk.com,
23296@notices.nextchapterbk.com,
margaret.johnson@frosttaxlaw.com,
uriel.stern@frosttaxlaw.com,
amy.mckay@frosttaxlaw.com

US Trustee - Baltimore USTPRegion04.BA.ECF@USDOJ.GOV

**25-10845 Notice will not be electronically mailed to:**

Debtor(s): Mid-Atlantic Rheumatology, LLC

*/s/ Daniel A. Staeven*
Daniel A. Staeven
