**THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | | |
|---|---|---|
| IN RE: | * | |
| | * | Case No.: 25-10845 |
| MID-ATLANTIC RHEUMATOLOGY | * | |
| LLC | * | Chapter 11 (Subchapter V) |
| Debtor | * | |

**DEBTOR'S MOTION FOR DETERMINATION THAT**
**APPOINTMENT OF PATIENT CARE OMBUDSMAN IS NOT NECESSARY**

Mid-Atlantic Rheumatology, LLC (the "Debtor"), by counsel, files this Motion for Determination that Appointment of Patient Care Ombudsman Is Not Necessary ("Motion"), and in support thereof states:

**Jurisdiction**

1.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The relief sought in this Motion is based on sections 105(a) and 333 of Title 11 of the United States Code ("Bankruptcy Code").

**The Chapter 11 Case**

3.      On January 31, 2025, the Debtor filed its voluntary petition for relief under Chapter 11, Subchapter V, of the Bankruptcy Code.

4.      The Debtor is a Maryland limited liability company with business operations in Millersville, Maryland.  The Debtor is owned and operated by Dr. Erinn Maury ("Dr. Maury") and operates a rheumatology medical practice.

5.   As of Debtor's last payroll, the Debtor employed approximately 17 employees.

6.   On its petition, the Debtor designated itself as a "health care business" as that term is defined by 11 U.S.C. § 107(27A).

7.   In a bankruptcy case involving health care businesses, 11 U.S.C. § 333 mandates the appointment of a patent care ombudsman "to monitor the quality of patient care and to represent the interests of patients of the health care business unless the court finds that the appointment of such ombudsman is not necessary for the protection of patents under the specific facts of the case." 11 U.S.C. § 333(a)(1).

8.   11 U.S.C. § 333(a)(1) further provides that, in cases in which an ombudsman must be appointed, the order compelling such an appointment must be entered "not later than 30 days after the commencement of the case."

9.   Fed. R. Bankr. P. 2007.2(a), which implements 11 U.S.C. § 333, requires the United States Trustee or a party in interest to file this motion "not later than 21 days after the commencement of this case" seeking either the appointment of an ombudsman or a determination that an ombudsman "is not necessary under the specific circumstances of the case for the protection of patients."

10.   Pursuant to Fed. R. Bankr. P. 2007.2(a), the Debtor's motion is due on or before February 21, 2025.  Thus, this Motion is timely filed.

11.   There has been no discovery of any information indicating that there are or has previously been any issues with the quality of care provided by the Debtor to its patients.

12.   The Debtor complies with all aspects of the Health Insurance Portability and Accountability Act ("HIPAA"), maintaining its patients' medical records confidentially and securely.

13.     The Debtor began to operate in 2015.  The Debtor is owned and operated by Dr. Maury.  The Debtor treats a wide range of musculoskeletal issues, including gout, osteoarthritis, and osteoporosis. The Debtor specializes in treating autoimmune diseases such as lupus, Sjogren's, systemic sclerosis, IgG-4 disease, polymyalgia rheumatica, temporal arteritis, polymyositis, dermatomyositis, and vasculitis.

### Relief Requested

14.     11 U.S.C. § 333 provides that the Court shall appoint a patient care ombudsman when the Debtor is a health care business, unless the Court determines that the appointment is not necessary to protect patients.

15.     The Debtor submits that the appointment of a patient care ombudsman is not necessary under the specific facts of this case.

16.     Bankruptcy courts have evaluated nine factors in determining whether it is necessary to appoint a patient care ombudsman. *In re North Shore Hematology-Oncology Associates, P.C.*, 400 B.R. 7, 11-13 (Bankr. E.D.N.Y. 2008), *In re Valley Health System*, 381 B.R. 756, 761-65 (Bankr. C.D. Cal. 2008) and *In re Alternative Family Care*, 377 B.R. 754 (Bankr. S.D.Fla. 2007).

17.     The nine factors, as applied here, are as follows:

i. The cause of the bankruptcy – Neither patient care nor privacy concerns were related to the filing of the Chapter 11 Petition.  Debtor filed the case due to the need to reject executory contracts and a lawsuit filed in another state. Accordingly, the Debtor submits that the first factor does not support the appointment of a patient care ombudsman.

ii. The presence and role of licensing or supervising entities – Just like all other medical providers in the State of Maryland, Debtor's business is subject to oversight by the Maryland

Health Care Commission, whose mission is to assure quality health care in Maryland, through the efficient licensure and effective discipline of health care providers under its jurisdiction. As such, Debtor's patients are already protected. Thus, the second factor does not support the appointment of a patient care ombudsman.

iii. Debtor's past history of patient care – Debtor's past history of patient care is excellent. Debtor has never been named as a Defendant in any court case as a medical provider and does not have any complaints with any licensing or regulatory agency. The Debtor principal is extremely well respected in the community and amongst her peers. Debtor submits that this factor does not support the appointment of a patient care ombudsman.

iv. The ability of the patients to protect their rights – Patients of the Debtor are able to protect their rights through the procedures established pursuant to HIPAA and seek redress for any complaints as to the care they receive through licensing bodies and legal remedies. There were no care or privacy concerns related to the filing of the Chapter 11, Subchapter V petition. Thus, Debtor submits that the fourth factor does not support the appointment of a patient care ombudsman.

v. The level of dependency of the patients on the Debtor – Debtor's patients are not known to have any particular dependency on the Debtor and could seek care at with other rheumatology practices, although Debtor believes it provides superior care to its patients compared to their other options. Thus, Debtor submits that this factor does not support the appointment of a patient care ombudsman.

vi. The likelihood of tension between the interests of the patients and the debtor – The Debtor is not aware of any reason for tension between the interests of the Debtor and its patients. Accordingly, the Debtor submits that the sixth factor does not support the appointment of a patient care ombudsman.

vii. The potential injury to the patients if the debtor drastically reduced its level of

4

patient care – Although current patients of the Debtor would be forced to seek a new doctor if the Debtor reduced its level of patient care, the patients would be expected to find alternative treatment facilities without much, if any, difficulty.  Thus, the Debtor submits that the seventh factor does not support the appointment of a patient care ombudsman.

viii. The presence and sufficiency of internal safeguards to ensure appropriate level of care – The Debtor has developed the following internal safeguards to ensure proper care and privacy:  Debtor's medical records are kept electronically, including a built-in Risk Management team in their IT contract, and stored in locked file cabinets. The Debtor's employees must review and acknowledge receipt of an Employee Handbook which covers HIPAA compliance matters as well as other privacy/confidentiality concerns.  As for care specifically, health insurance companies have imposed many safeguards, including pre-authorizations for certain procedures. These internal safeguards are more than adequate to ensure suitable levels of care to patients. Thus, Debtor submits this factor does not support the appointment of a patient care ombudsman.

ix.    The impact of the cost of an ombudsman on the likelihood of a successful reorganization – The cost of a patient care ombudsman could be significant and negatively impact the Debtor's chances of a successful reorganization.  The costs are borne by the bankruptcy estate and would be significant.  The appointment of a patient care ombudsman would result in a significantly lower payout to unsecured creditors in this case.  Further, the appointment of an ombudsman could raise a negative cloud over the business and result in patients moving to other companies which will result in loss of revenues. Therefore, Debtor submits this factor also does not support the appointment of a patient care ombudsman.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an Order finding that the appointment of a patient care ombudsman is not necessary or appropriate in this case, and for such other and further relief as this Court may deem just and proper.

Respectfully submitted,

By:    /s/ Daniel Alan Staeven
Daniel A. Staeven, Esq. (Bar. No. 27662) 839 Bestgate Road, Suite 400 Annapolis, Maryland 21401
(410) 497-5947
daniel.staeven@frosttaxlaw.com

Attorney for the Debtor

6

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of February 2025, this Motion was served via CM/ECF to the parties listed below and to all creditors on the court's mailing matrix.

25-10845 Notice will be electronically mailed to:

Monique Desiree Almy malmy@crowell.com,
cbest@crowell.com,
malmy@ecf.axosfs.com,
monique-almy-7127@ecf.pacerpro.com

Katherine A. (UST) Levin Katherine.A.Levin@usdoj.gov,
amy.busch@usdoj.gov

Daniel Alan Staeven daniel.staeven@frosttaxlaw.com,
daniel.staeven@frosttaxlaw.com,
21029@notices.nextchapterbk.com,
23296@notices.nextchapterbk.com,
margaret.johnson@frosttaxlaw.com,
uriel.stern@frosttaxlaw.com,
amy.mckay@frosttaxlaw.com

US Trustee - Baltimore USTPRegion04.BA.ECF@USDOJ.GOV

25-10845 Notice will not be electronically mailed to:

Debtor(s): Mid-Atlantic Rheumatology, LLC

/s/ Daniel A. Staeven
Daniel. A. Staeven