**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**Baltimore Division**

|  |  |  |
|---|---|---|
| | : | |
| IN RE: | : | |
| | : | |
| MID-ATLANTIC RHEUMATOLOGY, LLC, | : | **Case No. 10845-DER** |
| | : | |
| | : | **Chapter 11, Subchapter V** |
| Debtor. | : | |
| | : | |

**OI INFUSION SERVICES, LLC'S (I) RESPONSE TO DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTOR TO REJECT UNEXPIRED EXECUTORY CONTRACT WITH OI INFUSION SERVICES, LLC, NUNC PRO TUNC TO THE PETITION DATE, (II) NOTICE OF CESSATION OF ADMINISTRATIVE SERVICES UNDER ADMINISTRATIVE SERVICES AGREEMENT, AND (III) DEMAND FOR RETURN OF OWNED EQUIPMENT**

OI Infusion Services, LLC ("**OI Infusion**"), by and through its undersigned counsel, hereby responds to the captioned debtor and debtor in possession's ("**Debtor**") *Motion for Entry of an Order, Pursuant to Sections 105(A), 365(A), and 554(A) of the Bankruptcy Code, Authorizing the Debtors to Reject a Certain Unexpired Contract of OI Infusion Services, LLC, Nunc Pro Tunc to the Petition Date* [Docket No. 8] (the "**Motion**").

Furthermore, OI Infusion hereby gives notice to all relevant parties in interest of OI Infusion's cessation of all of its non-clinical "**Administrative Services**" heretofore rendered to Debtor (as such term is defined in the Administrative Services Agreement dated July 12, 2024 between Debtor and OI Infusion (the "**Services Agreement**")).  Moreover, as detailed below, OI Infusion demands Debtor's release and return of OI Infusion's leased equipment placed at Debtor's facility at 231 Najoles Rd., Millersburg, MD (the "**Infusion Site**", as defined in the Services

1

Agreement).  OI Infusion's response, this notice, and this demand for return of equipment, are collectively referred to as this "**Response**".

In support of this Response, OI Infusion respectfully states as follows:

### SUMMARY STATEMENT

The substance of OI Infusion's Response is essentially three-fold.

#### *Pre-Petition Notices to Terminate Services Agreement*

On January 24, 2025, seven days before its petition date, Debtor's counsel delivered a letter to OI Infusion purportedly terminating the Services Agreement for various self-serving and unsupportable reasons that, Debtor alleged, constitute a "for cause" termination.  However, it appears that Debtor's purported "for cause" termination notice letter was designed to cloak and distract from the actual facts.  In particular, that Debtor owed and was refusing to pay OI Infusion an aggregate past-due amount of more than $1,600,000 for both OI Infusion's invoiced Administrative Services and for Debtor's purchase of medications from OI Infusion under the Services Agreement.  Moreover, concurrent with counsel's delivery of Debtor's purported termination notice, OI Infusion learned Debtor had terminated OI Infusion's access to electronic payor portals necessary for OI Infusion to render a substantial portion of Debtor's accounts receivable billing and collection services under the Services Agreement.

It appears to OI Infusion that this confluence of events may have been driven by what OI Infusion suspects were Debtor's continuing and debilitating operating losses.  Indeed, OI Infusion is concerned that the actual state of Debtor's financial condition was not disclosed to OI Infusion

when the parties signed the Services Agreement in July 2024.  Or thereafter, as Debtor's obligations to OI Infusion mounted.

On January 27, 2025, OI Infusion's counsel delivered to Debtor's counsel OI Infusion's written response to Debtor's purported termination notice, clearly refuting and demonstrating the absurdity of Debtor's allegation of the existence of "cause" to terminate the Services Agreement. In doing so, OI Infusion articulated Debtor's numerous breaches of the Services Agreement, not least of which was Debtor's continuing failure and refusal to pay OI Infusion's invoices for its Administrative Services rendered and for medicines purchased under the Services Agreement. Furthermore, OI Infusion pointed out that Debtor had "raided" and hired one of OI Infusion's own employees, a clear breach of Debtor's non-solicitation covenant in the Services Agreement.

Despite Debtor's violations of the Services Agreement, and its repeated failure to pay its invoiced obligations for Administrative Services and purchased medicines, OI Infusion had repeatedly offered Debtor the chance to remedy its beaches, bring OI Infusion's invoices current, and repair their relationship.  In its January 27th response letter, OI Infusion reiterated that offer. However, four (4) days later Debtor commenced its bankruptcy case.  Indeed, since Debtor now seeks to reject the Services Agreement, with no indication of a replacement service provider, it's difficult to understand how, or what, Debtor purports to "reorganize", especially when factoring-in the level of Debtor's funded indebtedness to its secured lenders.

### *OI Infusion's Cessation of Uncompensated Administrative Services*

This Response serves as Notice to all parties in interest, and specifically to Debtor's secured lenders, that as of January 24, 2025, OI Infusion ceased any further Debtor patient billing services embedded in the Administrative Services.

To OI Infusion's knowledge, as of February 10, 2025, there exist approximately 113 billing and/or collection claims remaining with Debtor's payors, which may aggregate outstanding accounts receivable of approximately $258,000.

Furthermore, despite having been denied access to payors' electronic billing and collection portals, OI Infusion may have incurred costs for certain telephonic (or other) follow-up collection services with Debtor's payors rendered after January 24th, as well as after the petition date, that directly benefited Debtor's estate.  OI Infusion reserves the right to seek allowance and payment of any such costs incurred after the petition date as an administrative expense claim in this case.

OI Infusion estimates it would expend approximately $11,300 in value for its services, resources and costs to complete billing and/or facilitate collection of such outstanding accounts receivable, _provided_ it has access to the payors' electronic billing and collection portals.  However, OI Infusion is not willing to incur such costs without being compensated therefor.

### _Return of OI Infusion's Leased Equipment_

In rendering its Administrative Services, OI Infusion placed various items of equipment at the Infusion Site in Millersville, MD.  OI Infusion rents this equipment from its vendors.  OI Infusion is obligated to continue paying lease costs for such equipment until it's returned to the vendors.  Debtor has no interest in this equipment.

Attached is a listing of such equipment with corresponding serial numbers.  OI Infusion demands that Debtor immediately make this equipment available for OI Infusion (or its agent) to retrieve possession thereof at the Infusion Site.

**BRIEF IN SUPPORT OF RESPONSE**

***Administrative Services Agreement***

1. OI Infusion provides management services for physicians and medical practices across the country. These services include developing, staffing, and operating ambulatory infusion centers for and on behalf of physicians and medical practices. OI Infusion also provides administrative services for such practices including procurement of prescription drugs and supplies, billing and collection services, insurance verification and pre-certification/pre-authorization services, information technology services, staffing services, and other services in support of the ambulatory infusion centers.

2. The parties entered into the Services Agreement on July 12, 2024. IO Infusion thereupon began rendering its "menu" of Administrative Services to Debtor in accordance with the terms of the Services Agreement, in particular in-office infusion medicine, billing and collection services respecting Debtor's operations at the Infusion Site.

3. By a first Amendment dated December 31, 2024, the parties amended certain terms of the Services Agreement.

4. Under the terms of the Services Agreement, OI Infusion made numerous up-front payments of Debtor's nursing, technology and other operational expenses, which were to be reimbursed by Debtor. Furthermore, OI Infusion procured and sold to Debtor various pharmaceutical drugs used at the Infusion Site, the purchase price for which Debtor was to pay OI Infusion after Debtor received reimbursement for the applicable infusion services from its health insurers or other payors.

5. An important component of OI Infusion's Administrative Services was to bill payors and process claims for payment and collection from such payors for Debtor's infusion

services rendered at the Infusion Site.  OI Infusion's billing and collection services benefited Debtor because of, among other factors, OI Infusion's insurance verification, claim submission, and payment collection expertise.  Debtor's accounts receivable proceeds collected were sent by payors directly to a bank account owned and exclusively controlled by Debtor.  OI Infusion had view-only access to such account to view account transactions to track collection activity.

6.      OI Infusion was to be compensated for its Administrative Services by Debtor's payment of invoiced administrative and management fees as specified in the Services Agreement. OI Infusion was not able to access Debtor's collected accounts proceeds or other revenue to deduct or otherwise obtain payments owed.

7.      Therefore, inasmuch as it did not receive payments from payors or from Debtor's revenue, OI Infusion invoiced Debtor on a regular basis for the costs, expenses, and fees Debtor owed under the Services Agreement.

### *Pre-Petition Communications Between Debtor and OI Infusion*

8.      On January 24, 2025, Debtor's counsel sent a letter to OI Infusion purporting to terminate the Services Agreement "for cause", alleging OI Infusion breached the terms of the Services Agreement, but without providing any reasonable detail on the purported breaches (the "**Debtor Termination Letter**"), a copy of which is annexed as Exhibit A.

9.      On January 27, 2025, OI Infusion, through its counsel, sent Debtor's counsel a letter responding to the Debtor Termination Letter (the "**Response Letter**"), a copy of which is annexed as Exhibit B, detailing Debtor's various material breaches of the Services Agreement.  The Response Letter also detailed that Debtor owed OI Infusion over $1.6 million under past-due unpaid invoices.  Such unpaid fees and expenses continued to accrue under the Services Agreement up to the petition date.

10. The Response Letter further detailed why Debtor's Termination Letter could not serve to effectively terminate the Services Agreement for purported "cause", including because of Debtor's non-compliance with numerous terms of the Services Agreement and because Debtor had not provided OI Infusion the requisite cure period.

11. As also described in the Response Letter, on about January 24th Debtor unilaterally terminated OI Infusion's access to payors' electronic portals, access that was essential for OI Infusion to provide billing and/or collection services under the Services Agreement. Because of Debtor's actions, OI Infusion was unable to bill for patient services, if any, provided by Debtor after January 24, 2025. The charges for any of Debtor's patients who received infusion treatments after January 24th have not been billed by OI Infusion.

### *Remaining Collection Services and Accounts Receivable*

12. Despite Debtor's past-due obligations and its interference with OI Infusion's ability to bill and collect for infusion services, up to January 24, 2025, OI Infusion continued to provide Debtor services to bill and/or collect on accounts receivable from insurance payors. Fees continue to accrue for these services which Debtor has not paid.

13. To OI Infusion's knowledge, as of February 10, 2025, there are approximately 113 outstanding patient billing claims totaling approximately $258,000 for patient services previously provided by Debtor (collectively, the "**Remaining Claims**"). OI Infusion estimates it would expend value and incur costs of approximately $11,300 for OI Infusion to complete billing and/or collection of these Remining Claims.

### *Notice of Cessation of Administrative Services*

14. Debtor, its secured creditors and other interested parties are hereby notified that as of January 24, 2025, OI Infusion has not billed for patient services, if any, provided by Debtor

after January 24th. Furthermore, as of the date of this Response, OI Infusion has ceased all other Administrative Services under the Services Agreement. Inquiries related to Debtor's remaining billings, collections and/or accounts receivable should be directed to Debtor.

15. However, in accordance with the Services Agreement, OI Infusion will honor its obligation to provide, upon Debtor's reasonable request, information or "data" in its possession necessary for Debtor to prepare its tax returns. OI Infusion will also maintain, protect and relinquish any of Debtor's electronic patient records or information in OI Infusion's possession, in accordance with applicable rules, regulations and laws.

### *Demand for Return of Equipment*

16. As referenced above, OI Infusion placed various items of equipment at the Millersville, MD Infusion Site. OI Infusion rents this equipment from its vendors. OI Infusion is obligated to continue paying lease costs for such equipment until such is returned to the equipment leasing vendors. Debtor has no interest in this equipment.

17. Attached as Exhibit C is a listing of such equipment with corresponding serial numbers. OI Infusion demands that Debtor immediately make this equipment available for OI Infusion (or its agent) to retrieve possession thereof at the Infusion Site.

### *Reservation of Rights*

18. OI Infusion reserves all of its rights, defenses and claims against Debtor and any of Debtor's insiders related to and/or arising under the Services Agreement, Debtor's rejection of the Services Agreement, all of OI Infusion's rights under Section 365(h) of the Bankruptcy Code, and all other rights, defenses and claims that OI Infusion may have at law or in equity.

WHEREFORE, OI Infusion respectfully requests that the Court take notice of this Response and provide to OI Infusion any relief as OI Infusion may lawfully request and/or as the Court deems just and proper.

Dated: February 21, 2025

Respectfully Submitted,

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

*/s/ William E. Schonberg*
William E. Schonberg, Esq.
(*Pro Hac Vice Pending*)
127 Public Square, Suite 4900
Cleveland, OH  44114
Telephone: (216) 363-4634
Email:
wschonberg@beneschlaw.com

**TAYMAN LANE CHAVERRI LLP**

*/s/ Katie Lane Chaverri*
Katie Lane Chaverri, Esq.
MD Fed. Bar No. 17074
2001 L Street NW. Suite 500
Washington, DC  20036
Telephone: (202) 695-8146
Email: kchaverri@tlclawfirm.com

*Counsel to OI Infusion Services, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on the 21st day of February 2025, I reviewed the Court's CM/ECF system and it reports that an electronic copy of the *Response* will be served electronically by the Court's CM/ECF system on the following:

Daniel Alan Staeven
Frost & Associates, LLC
839 Bestgate Road, Suite 400
Annapolis, MD 21401
daniel.staeven@frosttaxlaw.com,
21029@notices.nextchapterbk.com,
23296@notices.nextchapterbk.com,
margaret.johnson@frosttaxlaw.com,
uriel.stern@frosttaxlaw.com,
amy.mckay@frosttaxlaw.com,
UStern@jubileebk.net

*Counsel for the Debtor*

Monique D.Almy
Crowell & Moring
1001 Pennsylvania Avenue, NW 10th Floor
Washington, DC 20004
malmy@crowell.com
cbest@crowell.com
malmy@ecf.axosfs.com
monique-almy-7127@ecf.pacerpro.com

*Subchapter V Trustee*

Hugh M. Bernstein
Katherine A. Levin
Office of U.S. Trustee
101 W. Lombard Street, Suite 2625
Baltimore, MD 21201
hugh.m.bernstein@usdoj.gov

*US Trustee and Counsel for US Trustee*

Bradley J. Swallow
bswallow@fblaw.com

*Counsel for M&T Bank*

_/s/ Katie Lane Chaverri_
Katie Lane Chaverri

10