**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**at Baltimore**

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| MID-ATLANTIC RHEUMATOLOGY, LLC | * | Case No. 25-10845-DER |
| | * | Chapter 11 (Subchapter V) |
| Debtor. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEBTOR'S CHAPTER 11, SUBCHAPTER V PLAN**

Mid-Atlantic Rheumatology, LLC, the above-captioned debtor and debtor-in-possession (the "Debtor"), proposes the following Plan under § 1190 and § 1191 of Title 11 of the United States Code (the "Bankruptcy Code").  A brief history of the Debtor's business operations is attached hereto as **Appendix A**.

All creditors and equity security holders should refer to Articles II through VI of this Plan for information regarding the precise treatment of their claims or interests.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney if you have one.  (If you do not have an attorney, you may wish to consult one.)  This Plan is a proposal by the Debtor and subject to court approval after an opportunity for objections and a hearing.**

## Article I.  Source of Payments

During the term of this Plan, the Debtor shall submit the disposable income (or value of such disposable income) necessary for the performance of this plan to the creditors (the "Creditors") and shall pay the Creditors the sums set forth herein.

## Article II.  Plan Term

The term of this Plan begins on the date of confirmation of this Plan and ends on the 36th month subsequent to the Effective Date as hereinafter defined in Section 15.02.

## Article III.  General Distributions Under Plan

The value of the property to be distributed under the Plan during the term of the Plan is not less than the Debtor's projected disposable income for that same period.  Unsecured creditors holding allowed claims will receive distributions, which the Debtor has valued at approximately **$0.03** cents on the dollar. The Plan also provides for the payment of secured, administrative, and priority claims in accordance with the Bankruptcy Code.

Article IV.  Classification and Treatment of Claims and Interests

1.  The Debtor has classified all claims and interests in accordance with §§ 1122, 1123, and 1190 of the Bankruptcy Code.  A chart detailing each class of claims or interests under the Plan, and the Debtor's proposed treatment for each is attached hereto as **Appendix B**.

2.  All parties claiming administrative expense priority (including unsecured claims) pursuant to § 507(a)(2) of the Bankruptcy Code but not already treated as such under this plan, shall file an application to approve their respective asserted administrative claim priority status no later than thirty (30) days after the Effective Date.  Any claim that is granted administrative expense priority shall receive the treatment set forth in **Appendix B**.

3.  Disputed Claims:

    a.  A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order and, either:

        i.  A proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

        ii.  No proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

    b.  Delay of Distribution on a Disputed Claim:  No distribution will be made on a disputed claim unless the claim is allowed by a final non-appealable order.

    c.  Settlement of Disputed Claims:  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

Article V.  Payments to Creditors Under Plan

Unless otherwise provided in this Plan or indicated on Appendix B, funds received by the Trustee or otherwise included in this Plan but not specifically disbursed to a secured creditor under this Plan, shall be used to pay the following claims in the priority indicated:

1.  Except as provided in § 1191(e) of the Bankruptcy Code, all claims entitled to priority under § 507 of the Bankruptcy Code shall be paid in accordance with § 1129(a)(9) of the Bankruptcy Code and as set forth on **Appendix B**.

2.  Pursuant to § 1191(e) of the Bankruptcy Code, the payment of claims entitled to priority under § 507(a)(2) and § 507(a)(3) of the Bankruptcy Code shall be paid under the Plan as set forth on **Appendix B**.

3.    All secured claims shall be paid in accordance with § 1129(b)(2)(A), § 1191(b), and § 1191(c) of the Bankruptcy Code, as set forth on **Appendix B**.

4.    After payment of the foregoing claims, sums received by the Trustee shall be paid, on a pro-rata basis, to allowed general unsecured claims.

5.    In accordance with § 1191 of the Bankruptcy Code and the terms of this Plan, the Debtor's equity security holders shall retain their interests in the Debtor as set forth on **Appendix B**.

## Article VI.  Secured Claims Generally

The term "secured claim" as used in this Plan shall be consistent with § 506 of the Bankruptcy Code and shall mean an allowed claim in an amount equal to the present value of the applicable creditor's interest in the Debtor's interest in the property, or in the amount subject to setoff, as may be established by this Plan, the Confirmation Order, or separate Order of the Court.

## Article VII. Trustee Compensation

The Trustee shall be paid for services rendered in this Chapter 11 case an administrative priority claim under § 507 of the Bankruptcy Code and pursuant to Article V as set forth on **Appendix B**.  All fees and expenses requested by the Trustee, including those on **Appendix B**, are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code.

## Article VIII.  Attorney Compensation

The Debtor's attorney, **Daniel Alan Staeven, Esq., Frost Law, 839 Bestgate Road, Suite 400, Annapolis, Maryland 21401**, shall be paid for the services rendered to the Debtor herein as an administrative and/or priority claim under § 507 of the Bankruptcy Code and pursuant to Article V of this Plan, as set forth on **Appendix B**.  All fees and expenses requested by the Debtor's attorney, including those on **Appendix B**, are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code.

## Article IX.  Liquidation Analysis

Attached hereto as **Appendix C** is the Liquidation Analysis required by § 1190(1)(B) of the Bankruptcy Code and the Local Rules of this Court.

## Article X.  Debtor's Disposable Income and Plan Funding

An exhibit describing (i) the Debtor's projected disposable income as defined by § 1191(d) of the Bankruptcy Code, (ii) the details supporting and the assumptions under which said projections were made, (iii) the source and value of funds and assets available for distribution under the Plan, and (iv) a summary of payments under this Plan is attached as **Appendix E**.

### Article XI.  Executory Contracts and Unexpired Leases

11.01 Assumption.  Pursuant to § 365 of the Bankruptcy Code, the Debtor assumes each executory contract and unexpired lease listed on **Appendix F**, effective upon the effective date of this Plan, as hereinafter defined in Article 15.02.

11.02. Rejection.  The Debtor has already rejected the contracts, by Motion, that it intends to reject in this case.

11.03 Assignment. NONE.

### Article XII.  Property Vests in Debtor Free and Clear

Except as provided in this Plan or the order confirming this Plan, all of the property of the estate, pursuant to §§ 1141(b) and 1141(c) of the Bankruptcy Code, vests in the Debtor as of the Effective Date free and clear of any claim or interest of any creditor provided for by this Plan.

### Article XIII.  Confirmed Plan Binding on Debtor and Creditors

Except as provided in §§ 1141 or 1192 of the Bankruptcy Code, as applicable, the provisions of this Plan shall, upon confirmation, bind the Debtor, each and every creditor of this estate and each party in interest, whether or not the claim of such creditor or party is provided for by the Plan and whether or not such creditor or party has accepted or has rejected the Plan.

### Article XIV.  Discharge

Upon the payment by the Debtor of the sums required under this Plan and application to the Court, the Debtor shall be eligible to receive a discharge under § 1192 of the Bankruptcy Code.

### Article XV.  Miscellaneous

15.01 Definitions and Rules of Construction.  The definitions and rules of construction set forth in § 101 and § 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions.

15.02 Effective Date of Plan.  The effective date of this Plan is the first business day following the date that is fourteen days after the entry of the order of confirmation.  If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

15.03 Severability.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

15.04 Binding Effect.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity.

15.05 Appendices.  The Appendices attached to the Plan are incorporated into the Plan by reference as if the same were fully rewritten herein.

15.06 Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

## Article XVI.  Plan Proposed in Good Faith

The Debtor represents that it is within the Debtor's ability to carry out this Plan and that the Plan is submitted in good faith.

## Article XVII.  Retention of Jurisdiction

The Court shall retain jurisdiction of this Chapter 11 case to issue orders necessary to the consummation of the Plan; to determine the allowance of compensation and expenses of professionals; to determine any and all adversary proceedings, applications and contested matters; to determine issues or disputes relating to the assumption of executory contracts and any claims related thereto; to determine disputes as to classification or allowance of claims or interests; to issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code; to enforce the provisions of the Plan; to recover all assets of the Debtor and property of the Debtor's estate, wherever located; to resolve any dispute between or among any of the parties to this bankruptcy proceeding, to determine other such matters as may be set forth in a confirmation order or as may be authorized under the provisions of the Bankruptcy Code; to enter a final decree closing the bankruptcy case; and to correct any defect, cure any omission or reconcile any inconsistency in this Plan or confirmation order, and to take any action or make any ruling as may be necessary to carry out the purpose and intent of this Plan.

Article XVIII.  [Other Non-Standard Provisions]

**HUMANA, INC. PLAN PROVISION**

The Debtor assumes all obligations under the contract and Humana, Inc. can continue to recoup overpayments in the ordinary course of business.

DATED: <u>May 1, 2025</u>

<u> Mid-Atlantic Rheumatology, LLC</u> Debtor
<u>By: Erinn Maury, M.D, Sole Member</u>

<u>/s/ Daniel Alan Staeven, Esq.</u>
Daniel Alan Staeven, Esq.
Fed. Bar  No: 27662
Frost Law
839 Bestgate Road, Suite 400
Annapolis, Maryland 21401
(410) 497-5947
daniel.staeven@askfrost.com

*Attorney for Mid-Atlantic Rheumatology, LLC*

**Appendix A**
(Debtor's Business History)

## A.  Nature and History of the Debtor's Business or Commercial Activities:

Mid-Atlantic Rheumatology is a specialized medical practice in Millersville, Maryland, dedicated to diagnosing and treating various rheumatic conditions. Established in 2016 by Dr. Erinn Maury, the practice expanded in 2022 with the addition of another doctor.

The practice offers comprehensive care for musculoskeletal issues, including gout, osteoarthritis, and osteoporosis. It also specializes in treating autoimmune diseases such as lupus, Sjogren's syndrome, systemic sclerosis, IgG-4 disease, polymyalgia rheumatica, temporal arteritis, polymyositis, dermatomyositis, and vasculitis. In-office services include medication infusions and injections, catering to patients and those referred by community physicians for specialty medication administration.

Mid-Atlantic Rheumatology emphasizes collaboration with patients and other healthcare providers to develop individualized care plans. It also provides resources and advocates for patients, aiming to enhance the quality of care and support for individuals with rheumatologic conditions.

In summary, Mid-Atlantic Rheumatology combines specialized clinical expertise with a commitment to individualized patient care and advocacy, contributing positively to the rheumatology landscape in the Millersville area.

## B.  Ownership Structure of the Debtor's Business or Commercial Activities:

The practice is owned and operated by Dr. Erinn Maury, its founding physician, who established it in 2016.

## C.  Description of the Performance of the Debtor's Business or Commercial Activities in the Three Years Before the Bankruptcy Filing and the Events Leading to the Debtor's Bankruptcy Filing:

The medical practice's financial downfall over the past three years can be attributed to two primary factors: operational challenges and economic mismanagement.

**1. Operational Challenges:** The practice suffered from a lack of clear, competent leadership, leading to poor decisions and a failure to develop a solid business plan. The leadership did not conduct proper due diligence when expanding the practice, moving to a larger suite, and hiring additional providers. No careful productivity or financial viability was evaluated before these expansions. For instance, the practice moved to a new location without subletting or properly terminating the lease, missing the deadline to cancel the lease without penalties. Additionally, the practice hired a nurse practitioner and a doctor of osteopathy (DO), earning

a combined salary of around $400K annually without establishing any performance or productivity measures. These highly paid individuals worked for two years without generating sufficient revenue, further exacerbating financial strain. The practice leader at the time lacked essential skills to monitor financials, track accounts receivable or payable, and evaluate workflows. This was only recognized in September 2023, when consultants were brought in, revealing an alarming $5 million in outstanding accounts receivable, with $2.5 million of that being write-offs due to billing errors.

**2. Financial Mismanagement:** The practice's financial troubles worsened due to incompetent administration, particularly in managing drug inventory and tracking high-dollar purchases. The previous practice administrator did not monitor drug purchases or maintain an inventory system. When a critical vendor cut the practice off due to non-payment, the practice entered into a second agreement with another vendor, resulting in a cycle of debt. Without running regular accounts receivable reports, the practice could not track whether claims were paid. Furthermore, the office move was mishandled, and the practice failed to update the mailing address with insurance companies, leading to returned or undelivered checks. This caused a significant cash flow issue, forcing the practice to stop infusions, further draining revenue. By late 2023, the practice had no funds to pay vendors. However, early in 2024, the treasury department began withholding Medicare payments due to a delinquent SBA loan, and since Medicare accounted for 60% of the practice's revenue, this caused a financial collapse. As a result, a vendor filed a lawsuit in late 2024. In March 2025, the practice ultimately dismissed an employee to address these ongoing challenges.

In summary, a combination of leadership failures, poor financial oversight, and operational mismanagement created a perfect storm of economic distress for the practice, leaving it on the brink of collapse.

D.  **Other Pertinent or Miscellaneous Information:** None

**Appendix B**

(Classification and Treatment of
Claims and Interests)

| Class No. | Description of Claims | Total Amount of Claims | Proposed Treatment Under Plan | Estimated Percentage Recovery |
|---|---|---|---|---|
| 1 | Daniel Staeven, Esq., Administrative Claim | $45,000.00 | Pay administrative claim at Effective Date or by Agreement | 100% |
| 2 | Monique Almy, Esq. Subchapter V Trustee | $17,500.00 | Pay administrative claim at Effective Date or by Agreement | 100% |
| 3 | Administrative Claim- OI Infusion Services, LLC | $112,195.00 | Pay by Agreement | 100% |
| 4 | Secured Claims- M & T Bank, ADS, and SBA | $672,534.78 | Pay by Agreement | 100% |
| 5 | Secured Claim- Cardinal | $34,424.20 | Pay by Order | 100% |
| 6 | Unsecured Claims | $2,933,107.47 | Pay Disposable Income, Impaired | 3% |

**Appendix C**
(Liquidation Analysis)

Liquidation Analysis
Mid-Atlantic Rheumatology, LLC
Bankruptcy Case #25-10845

| Assets | | | 80% Quick Sale Value | |
|---|---|---|---|---|
| Cash | $ | 566,716.40 | $ | 566,716.40 |
| Accounts Receivable | $ | 111,505.58 | $ | 89,204.46 |
| Office Furniture | $ | 2,900.00 | $ | 2,320.00 |
| Waiting Room Furniture | $ | 2,500.00 | $ | 2,000.00 |
| Infusion Suite | $ | 2,500.00 | $ | 2,000.00 |
| Exam Room | $ | 1,450.00 | $ | 1,160.00 |
| Workstations | $ | 11,655.00 | $ | 9,324.00 |
| Networking Equipment | $ | 2,730.00 | $ | 2,184.00 |
| Lasers | $ | 5,000.00 | $ | 4,000.00 |
| | | | | |
| **Total Assets** | $ | 706,956.98 | $ | 678,908.86 |

| Unsecured Creditors | | |
|---|---|---|
| Cardinal Health 108, LLC | $ | 1,245,048.37 |
| M & T Bank | $ | 45,354.94 |
| McKesson Medical-Surgical Inc. | $ | 147,535.88 |
| OI Infusion Services, LLC | $ | 1,432,366.28 |
| Aetna, Inc. | $ | 62,802.00 |
| **Total Unsecured** | $ | 2,933,107.47 |

| Secured Creditors | | |
|---|---|---|
| M & T Bank | $ | 198,565.02 |
| ADS Specialty Healthcare LLC | $ | 412,322.09 |
| | | |
| United States Small Business Administration | $ | 61,647.67 |
| Cardinal Health 108, LLC | $ | 34,424.20 |

| | | |
|---|---|---|
| **Total Secured Creditors** | $ | 706,958.98 |
| **Administrative Creditors** | | |
| Daniel A. Staeven | $ | 45,000.00 |
| Monique Almy, Sub V Trustee | $ | 17,500.00 |
| OI Infusion Services, LLC | $ | 112,195.00 |
| **Total Secured & Priority Claims** | $ | 881,653.98 |
| **Unsecured Claims** | $ | 2,933,107.47 |
| **Total Liabilities** | $ | 3,814,761.45 |

**<u>Appendix D</u>**
(Projected Disposable Income Analysis)

| | Mar-25 | Apr-25 | May-25 | Jun-25 | Jul-25 | Aug-25 | Sep-25 | Oct-25 | Nov-25 | Dec-25 | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | |
| Fee for Service Income | $340,000.00 | $291,382.50 | $328,378.00 | $340,555.00 | $355,000.00 | $360,000.00 | $372,012.50 | $380,000.00 | $390,000.00 | $400,000.00 | |
| Refunds | | | | | | | | | | | |
| Sales of Product Income | | | | | | | | | | | |
| Total Income | $340,000.00 | $291,382.50 | $328,378.00 | $340,555.00 | $355,000.00 | $360,000.00 | $372,012.50 | $380,000.00 | $390,000.00 | $400,000.00 | |
| **Cost of Goods Sold** | | | | | | | | | | | |
| Supplements | $1,000.00 | $1,200.00 | $2,500.00 | $4,000.00 | $5,000.00 | $5,000.00 | $6,000.00 | $6,000.00 | $8,000.00 | $5,000.00 | |
| Vaccines and Medicines | $160,000.00 | $110,000.00 | $120,000.00 | $125,000.00 | $140,000.00 | $145,000.00 | $150,000.00 | $165,000.00 | $170,000.00 | $190,000.00 | |
| Cardinal Purchases | | | | | | | | | | | |
| Total Vaccines and Medicines | $161,000.00 | $111,200.00 | $122,500.00 | $129,000.00 | $145,000.00 | $150,000.00 | $156,000.00 | $171,000.00 | $178,000.00 | $195,000.00 | |
| **Total Cost of Goods Sold** | $161,000.00 | $111,200.00 | $122,500.00 | $129,000.00 | $145,000.00 | $150,000.00 | $156,000.00 | $171,000.00 | $178,000.00 | $195,000.00 | |
| **Gross Profit** | $179,000.00 | $180,182.50 | $205,878.00 | $211,555.00 | $210,000.00 | $210,000.00 | $216,012.50 | $209,000.00 | $212,000.00 | $205,000.00 | |
| **Expenses** | | | | | | | | | | | |
| Bank Service Charges | $200.00 | $250.00 | $250.00 | $300.00 | $300.00 | $400.00 | $500.00 | $500.00 | $500.00 | $500.00 | |
| Marketing | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | $1,500.00 | |
| Business Licenses and Permits | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | |
| Besse Adequate Protection Payment | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | |
| M&T Adequate Protection Payment | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | |
| SBA Adequate Protection Payment | $751.00 | $751.00 | $751.00 | $751.00 | $751.00 | $751.00 | $751.00 | $751.00 | $751.00 | $751.00 | |
| Cardinal Adequate Protection Payment | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | |
| OI Infusion Administrative Payments | | | | $60,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | |
| Computer and Internet Expenses | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | |
| Continuing Education | $500.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | |
| Credit Card Fees | $2,000.00 | $2,100.00 | $2,150.00 | $2,200.00 | $2,250.00 | $2,300.00 | $2,350.00 | $2,400.00 | $2,450.00 | $2,500.00 | |
| Dues and Subscriptions | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | |
| Employee Benefits | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | |
| Equipment Rental | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | |
| Insurance Expense | $2,200.00 | $2,200.00 | $2,200.00 | $2,200.00 | $2,200.00 | $2,200.00 | $2,200.00 | $2,200.00 | $2,200.00 | $2,200.00 | |
| IT & Web Security Services | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | |
| Legal | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | |
| Medical Billing Subscriptions | $8,600.00 | $8,600.00 | $8,600.00 | $8,600.00 | $8,600.00 | $8,600.00 | $8,600.00 | $8,600.00 | $8,600.00 | $8,600.00 | |
| Medical Records and Supplies | $1,000.00 | $1,000.00 | $1,200.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,200.00 | $2,200.00 | $2,200.00 | $2,200.00 | |
| Office Supplies | $1,500.00 | $1,500.00 | $1,500.00 | $1,700.00 | $1,700.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | |
| Payroll Fees | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | |
| Payroll Taxes | $35,000.00 | $30,000.00 | $35,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | |
| Professional Fees | $600.00 | $200.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | |
| Rent Expense | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | |
| Salary & Wages | $120,000.00 | $100,000.00 | $120,000.00 | $90,000.00 | $90,000.00 | $90,000.00 | $90,000.00 | $90,000.00 | $90,000.00 | $90,000.00 | |
| Small Medical Equipment | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | |
| Website Maintenance | $150.00 | $2,000.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | |
| **Total Expenses** | $228,401.00 | $205,101.00 | $228,451.00 | $254,551.00 | $199,601.00 | $200,051.00 | $200,401.00 | $200,451.00 | $200,501.00 | $200,551.00 | |
| **Net Operating Income** | -$49,401.00 | -$24,918.50 | -$22,573.00 | -$42,996.00 | $10,399.00 | $9,949.00 | $15,611.50 | $8,549.00 | $11,499.00 | $4,449.00 | $13,011.50 |

**Appendix D**
(Assumptions and Support for Projected Disposable Income)

1. Monthly income derived from the company's receivables will fund the semi-annual payment to the unsecured creditors.

**<u>Appendix D</u>**
(Sources and Value of Funds and Assets for Distributions)

1. The Debtor's disposable income will support the plan, and no other funds are available.

**<u>Appendix E</u>**
(Summary of Payments Under Plan)

| Unsecured Creditors | Amount Due | Percentage of Disposable Income | 6 Semi-Annual Payments |
|---|---|---|---|
| Cardinal Health 108, LLC | $ 1,245,048.37 | 42.45% | $5,523.13 |
| M & T Bank | $ 45,354.94 | 1.55% | $201.20 |
| McKesson Medical-Surgical Inc. | $ 147,535.88 | 5.03% | $654.48 |
| OI Infusion Services, LLC | $ 1,432,366.28 | 48.83% | $6,354.09 |
| Aetna, Inc. | $ 62,802.00 | 2.14% | $278.59 |
| Total Unsecured | $ 2,933,107.47 | 100.00% | |
| | | | $13,011.50 |

| | |
|---|---|
| Total Payments Made | $78,069.00 |
| Percentage Paid | 0.026616481 |

**Appendix F**

(Assumed Executory Contracts and
Unexpired Leases)

| Name and Address of Party to Debtor's Executory Contract | Description of Executory Contract | Proposed Cure Amount and Anticipated Date of Cure Payment |
|---|---|---|
| St. John Properties 2560 Lord Baltimore Drive Windsor Mill, MD 21244 | Lease of 231 Najoles Drive, Suite 160, Millersville, MD | ASSUME |
| Humana, Inc., et al | Physician Participation Agreement dated 6/1/06 | ASSUME |
| | | |